Jeffrey Howard WILSON, Appellant,

v.

The STATE of Texas, Appellee.

No. 08-85-00051-CR.

Court of Appeals of Texas,
El Paso.

Oct. 2, 1985.

---

Charles A. Deason, El Paso, for appellant.

Steve W. Simmons, Dist. Atty., El Paso, for appellee.

Before WARD, OSBORN and SCHULTE, JJ.

## OPINION

OSBORN, Justice.

This case presents the single issue of whether evidence of an Enzyme Multiplied Immunoassay Technique (EMIT) is admissible to prove the presence of a controlled drug in a urine sample which is offered in evidence in a revocation of probation hearing. The trial court admitted the test results and revoked probation. We reverse and remand.

In 1983, Jeffrey Howard Wilson pled guilty to a charge of unlawful possession of a controlled substance and he was placed on probation for ten years. In 1984, he pled guilty to a charge of burglary of a vehicle and he was sentenced to ten years confinement with shock probation and subsequently placed on adult probation and placed in the custodial supervision of the El Paso Court Residential Treatment Center. While at the center, a urine test in December, 1984, revealed the presence of a controlled substance and the State moved to revoke probation. Following a hearing at which the results of the test were received, over objection, into evidence, probation was revoked and Appellant sentenced to four years confinement.

The Appellant asserts in a single ground of error that the trial court erred in admitting into evidence a urinalysis based upon the EMIT system as such constitutes experimental evidence unworthy of probative effect and is an insufficient basis upon which to revoke probation. Appellant relies primarily upon the holding in *Isaacks v. State*, 646 S.W.2d 602 (Tex.App.—Houston [1st Dist.] 1983, PDRR). He argues that in this case there was not sufficient proof that the test had attained scientific acceptance as a reliable and accurate means of ascertaining the results of the urinalysis.

In the *Isaacks* case the court rejected the results of a urine test on an EMET system machine. Unlike that case, the operator of the equipment in the case at bar was well qualified; he was a biological scientist with a degree from Syracuse University and he had completed a substantial number of laboratory courses in chemistry. He gave a full and complete explanation as to the operation of the Gilford Stasar 3 Spectrophotometer, the CP–5000 Syva timer printer and the autocarosel. He testified the EMIT system was rated as being ninety-five percent accurate. On cross-examination he was asked if the EMIT system has attained scientific acceptance in the scientific community. He answered:

> I can't speak for all the scientific community. I know that the Atlanta Center for Disease Control is satisfied with its accuracy.

He later said the Atlanta Center had found the system to be ninety-seven to ninety-nine percent accurate. See: *Jensen v. Lick*, 589 F.Supp. 35 (USDC N.Dak, 1984).

There is no proof as to the EMIT system either being accepted or rejected anyplace else. When the court rejected the results of a "truth serum" test in *Cain v. State*, 549 S.W.2d 707 (Tex.Crim.App.1977), it did so on the grounds that the test had not yet attained scientific acceptance as being reliable and accurate. The burden of proof is on the one who offers the test results to establish the scientific acceptance of its equipment and test results. That was not done in this case. The objection to the test results should have been sustained. We sustain Ground of Error No. One.

There is testimony that the urine specimen was frozen after this test and that the sample could be used to confirm the EMIT system analysis. If there should be further confirmation of the initial test, there may be evidence to support the decision to revoke probation. On remand, evidence may be offered to establish the scientific acceptance of the EMIT system and upon that basis the test results may become admissible.

The order revoking probation is reversed and the case is remanded to the trial court.