**Reginald J. LEWIS, Appellant,**

v.

**The STATE of Texas, Appellee.**

**Nos. 01–86–0101–CR, 01–86–0102–CR, 01–86–0103–CR, 01–86–0104–CR.**

Court of Appeals of Texas, Houston (1st Dist.).

Aug. 6, 1987.

Rehearing Denied Sept. 17, 1987.

Virgie Lemond Mouton, Houston, Donald W. Bankston, Richmond, for appellant.

Sam W. Dick, Fort Bend, Asst. Dist. Atty., Richmond, Bryan K. Best, Fort Bend, Asst. Dist. Atty., Richmond, for appellee.

Before WARREN, HOYT and DUNN, JJ.

## OPINION

WARREN, Justice.

Appellant was indicted for the murder of four members of his family; the four causes were consolidated for trial. A jury found him guilty and assessed punishment at 99 years imprisonment in each cause.

In seven points of error, appellant claims that:

(1) the court erroneously admitted into evidence, over objection, the results of a blood-spatter analysis by Herbert Leon MacDonnell;

(2) the trial court erred in overruling appellant's motion to suppress and in admitting portions of his written statement, because it was the product of an illegal arrest;

(3) the evidence is insufficient to sustain each murder conviction; and

(4) the prosecutor's jury argument was outside the permissible limits and violated appellant's right to due process.

In the early morning hours of February 1, 1985, appellant awakened his neighbors in Missouri City, in Fort Bend County, by loudly knocking and screaming at their front door. Appellant told them that his house was on fire. Keith Sherrod accompanied appellant to his house while Sherrod's mother, Ann Parker, called the fire department. Sherrod's stepfather, Edward Parker, dressed and followed Sherrod and appellant.

Sherrod, Parker, and Nathaniel Southern, another neighbor, discovered the bodies of appellant's parents and his two brothers in the Lewises' house. The body of Henry Lewis Sr., appellant's father, was found burning in a hallway. Investigators later determined that Lewis Sr. had been shot twice, stabbed, and beaten with a blunt, heavy object. Henry Lewis Jr. had been shot once in the head, and lay dead on a couch. Mary Lewis and Byron Lewis were found dead in their beds, each of them shot by a .38 caliber pistol, the same caliber as the gun used to kill the other family members.

Appellant was asked to accompany Houston police officers to their headquarters in Harris County, at about 7:30 a.m. He expressed a willingness to do all he could to help apprehend the murderer, and voluntarily gave samples of his clothes, hair, and blood. Although Sergeant Larry Webber testified that appellant was free to go at that time, he was fingerprinted and photographed, and his clothes were exchanged for jail clothes. At 1:00 p.m., after extensive questioning and an investigation of the scene, the officers determined that appellant should be considered a suspect. They took him to a magistrate in Fort Bend County, who warned appellant that he was charged with "suspicion of murder," gave Miranda warnings, and set a bond at $100,000.

Later that afternoon, after receiving Miranda warnings and the magistrate's warning, appellant made an exculpatory written statement detailing his activities of the previous evening, on a form captioned "Statement of Person in Custody." He stated that he had traveled to Houston to attend an evening class, which was cancelled due to extremely cold weather; that he had stopped at a service station, a nightclub, and an adult bookstore; that he had spent an hour parked at a field five minutes from

his home, reading a schoolbook; and that when he returned home he saw his father's body on fire and ran next door for help.

While appellant was in custody, no arrest warrant issued, nor was an examining trial conducted. The police held appellant for three days, and then released him, because, as Webber testified, probable cause to arrest the appellant had not been established. Appellant was indicted by the Fort Bend County grand jury on May 21, 1985.

In his first point of error, appellant argues that the trial court should have excluded the testimony of Herbert L. MacDonnell, an expert witness for the State, because MacDonnell's discipline is neither scientifically recognized nor considered scientifically reliable in Texas. MacDonnell is a criminologist whose testimony concerned the interpretation of bloodstain patterns found at the scene and on the appellant's clothes.

MacDonnell testified that he has undergraduate and graduate degrees in chemistry and physics; that he had been employed as a professor of chemistry and as an industrial chemist; that he had studied bloodstain characteristics since 1954; that his research involved thousands of laboratory experiments; that he had studied with Dr. Paul Kirk, a California criminologist, who had testified regarding bloodstain analysis in other states; that blood acts as any other liquid when it is dropped, smeared, or spattered; and that bloodstain analysis borrows its techniques from the fields of chemistry, physics, mathematics, and biology.

Appellant argues that MacDonnell's discipline is a novel technique, and that the State was bound to show its "general acceptance in the particular field to which it belongs" in order to establish the admissibility of MacDonnell's testimony. *Frye v. United States*, 293 F. 1013 (D.C.Cir.1923); *Jones v. State*, 716 S.W.2d 142, 145 (Tex. App.—Austin 1986, pet. pending). Appellant cites four cases in which, he argues, Texas courts have found that specific scientific techniques had not attained general acceptance. *Cain v. State*, 549 S.W.2d 707 (Tex.Crim.App.), *cert. denied*, 434 U.S. 845,

98 S.Ct. 149, 54 L.Ed.2d 111 (1977); *Cody v. State*, 548 S.W.2d 401 (Tex.Crim.App. 1977); *Wilson v. State*, 697 S.W.2d 83 (Tex. App.—El Paso 1985, pet. ref'd); *Isaacks v. State*, 646 S.W.2d 602 (Tex.App.—Houston [1st Dist.] 1983, pet. ref'd).

Each of the cases cited by appellant is distinguishable from the case at bar. In *Wilson*, the sponsoring witness specifically testified that he could not say that a urinalysis system had been generally accepted. 697 S.W.2d at 84. *Isaacks* involved a witness who was unqualified to testify regarding general acceptance of a urinalysis system. 646 S.W.2d at 603. In *Cain*, the court noted that "truth serum" tests were widely regarded as unreliable. 549 S.W.2d at 712. In *Cody*, the State failed to establish the proper predicate for introduction of a breathalyzer test. 548 S.W.2d at 404.

In the present case, MacDonnell testified that his discipline was not particularly novel, and that he had drawn from bloodstain analysis in his testimony in 26 states. He testified regarding his extensive expert credentials, and explained that bloodstain analysis is a narrower application of techniques borrowed from established fields.

■ Appellant complains that bloodstain analysis has never been offered as evidence in a Texas criminal trial, and observes that, at trial, the State failed to cite any cases approving the technique in other jurisdictions. Judicial recognition of a given technique is a factor in determining general acceptance. *Jones*, 716 S.W.2d at 147.

This Court may take judicial notice on its own motion of the judicial decisions of other states. Tex.R.Crim.Evid. 202. Bloodstain analysis is considered a proper subject of expert testimony in several states. *State v. Melson*, 638 S.W.2d 342 (Tenn. 1982), *cert. denied*, 459 U.S. 1137, 103 S.Ct. 770, 74 L.Ed.2d 983 (1983); *State v. Hilton*, 431 A.2d 1296 (Me.1981); *People v. Erickson*, 89 Ill.App.3d 56, 44 Ill.Dec. 138, 411 N.E.2d 44 (1980); *People v. Carter*, 48 Cal.2d 737, 312 P.2d 665 (1957). Such testimony was also admitted in a recent Texas trial, although it is unapparent whether the evidence was challenged. *Guerrero v.*

*State,* 720 S.W.2d 233, 234 (Tex.App.—Austin 1986, pet. ref'd).

■ MacDonnell testified that he was aware of "many" other individuals who study in his field. Appellant notes that these other individuals were not named, and suggests that MacDonnell should not have been allowed to establish the general acceptance of his methods by his testimony alone. This rule might be valid in cases where the challenged technique uses untested methods, or where the reliability of the technique is seriously questioned, as is the case with lie detectors and "truth serum." However, MacDonnell's studies are based on general principles of physics, chemistry, biology, and mathematics, and his methods use tools as widely recognized as the microscope; his techniques are neither untested nor unreliable. We hold that McDonnell's testimony was properly admitted.

Appellant's first point of error is overruled.

■ In his second point of error, appellant urges that a written statement taken after his illegal arrest should have been excluded from the evidence, and that it was not harmless error to admit the statement, even though it was exculpatory in nature. In his written statement, appellant confessed nothing, but offered an elaborate alibi explaining his activities of the previous evening. When it is shown that a statement is the product of an illegal arrest, "it is immaterial whether the declarations be termed 'exculpatory.'" *Wong Sun v. United States,* 371 U.S. 471, 487, 83 S.Ct. 407, 417, 9 L.Ed.2d 441 (1963). Even exculpatory statements may be excluded as fruit of an illegal arrest.

After a hearing on appellant's motion to suppress, the trial court ruled that appellant's statement was admissible. In written findings of fact and conclusions of law, the trial court concluded that "[p]robable cause existed for the detention of Defendant during which the five (5) page statement was given."

■ No evidence that probable cause existed was presented to the trial court. In fact, Sergeant Webber testified at trial that he felt that there had been no probable cause for appellant's detention, and that appellant was released for that reason. The prolonged detention of appellant for investigative purposes was illegal. *Dunaway v. New York,* 442 U.S. 200, 216, 99 S.Ct. 2248, 2258, 60 L.Ed.2d 824 (1979); *Townsley v. State,* 652 S.W.2d 791, 795 (Tex.Crim.App.1983); *Ussery v. State,* 651 S.W.2d 767, 770–71 (Tex.Crim.App.1983).

On appeal, the State does not argue that appellant was legally detained, but argues that the interrogation leading to the written statement was merely a continuation of an interview that had begun in the morning, before appellant was considered a suspect and at a time when he was free to leave police headquarters. The State urges that appellant was not in custody at the time the interview began; thus, the written statement was not tainted by the illegal arrest.

It is immaterial whether appellant was in custody at the time of his morning interview. When appellant made the written statement, he was being illegally held on a charge of "suspicion of murder," for which an improper bond had been set at $100,000.

■ The use of a statement resulting from an illegal arrest offends the fourth amendment guarantee against unreasonable search and seizure, and for that reason a mere showing that the statement or confession was voluntarily given under the terms of the fifth amendment will not remove the taint of the unlawful arrest. *Brown v. Illinois,* 422 U.S. 590, 602, 95 S.Ct. 2254, 2261, 45 L.Ed.2d 416 (1975). "In order for the causal chain, between the illegal arrest and the statements made subsequent thereto, to be broken, *Wong Sun* requires not merely that the statement meet the Fifth Amendment standard of voluntariness but that it be 'sufficiently an act of free will to purge the primary taint.'" *Id.* (quoting *Wong Sun v. United States,* 371 U.S. at 486, 83 S.Ct. at 416).

In *Brown,* the Court held that "the question whether a confession is the product of a free will ... must be answered on the

facts of each case." 422 U.S. at 603, 95 S.Ct. at 2261. Although the Court appeared to reject a mechanical test, it listed four relevant factors: (1) whether *Miranda* warnings were given; (2) the temporal proximity of the arrest and the confession; (3) the presence of intervening circumstances; and, particularly, (4) the purpose and flagrancy of the official misconduct. *Id.* at 603–04, 95 S.Ct. at 2261–62.

■ The giving of *Miranda* warnings is merely a threshold requirement; without them, a confession may not be deemed voluntary, *id.* at 604, 95 S.Ct. at 2262, but the mere giving of the warnings, as in this case, does not establish that the statement was unrelated to the unlawful arrest. *Id.* at 602, 95 S.Ct. at 2261.

■ The time factor has been de-emphasized by courts that have considered the question, in part because it rarely decides the case. On one hand, a confession contemporaneous with arrest is fruit of the poisonous tree, while on the other hand, a long illegal detention, which may result in a confession, violates the fourth amendment right to an early judicial determination of probable cause. *See Gerstein v. Pugh,* 420 U.S. 103, 114, 95 S.Ct. 854, 863, 43 L.Ed.2d 54 (1975); 3 W. Lafave, *Search and Seizure,* § 11.4(b) at 394–95 (1987). Consequently, the temporal proximity of a confession to an illegal arrest must be considered in light of the other factors, particularly the presence or absence of any intervening circumstances. *Id.* at 394 (quoting Comment, *The Fourth Amendment and Tainted Confessions: Admissibility as a Policy Decision,* 13 Hous.L.Rev. 753, 770–71 (1976)).

■ In the present case, nothing occurred in the period of time between arrest and confession to render appellant's statement an act of free will sufficient to purge the primary taint of the arrest. The State observes that appellant was given 20 minutes to read his statement, and that he was extended the "courtesies" of coffee, soda, tobacco, and use of a telephone throughout the day that he gave his statement. Such amenities may illustrate that the statement was not the result of coercive police tactics, but they do not rise to the level of "intervening circumstances" contemplated by the *Brown* decision. The question of whether intervening circumstances make a confession "sufficiently an act of free will" may be answered by looking to the source of the standard, *Wong Sun v. United States,* 371 U.S. 471, 83 S.Ct. 407.

In *Wong Sun,* the confession of one petitioner, James Toy, was deemed inadmissible because it was the unattenuated result of an unlawful arrest. *Id.* at 486, 83 S.Ct. at 416. But Wong Sun's confession was held admissible because it was given after he had been released on his own recognizance after a lawful arraignment, on the occasion of his voluntary return to police headquarters to give a statement. *Id.* at 491, 83 S.Ct. at 419. The Court held that the connection between the arrest and the statement had "become so attenuated as to dissipate the taint." *Id.* The present case does not involve any such attenuation. Appellant's statement, whether voluntary or not, was given immediately after he was illegally placed in custody.

The State also suggests that the fact that appellant was taken before a magistrate should influence our decision. Commitment under the authority of a magistrate has been recognized as a sufficient intervening circumstance. *Johnson v. Louisiana,* 406 U.S. 356, 365, 92 S.Ct. 1620, 1626, 32 L.Ed.2d 152 (1972); *cf. Self v. State,* 709 S.W.2d 662, 667 (Tex.Crim.App. 1986). It has been stated that the taint can be removed by "some demonstrably effective break in the chain of events leading from the illegal arrest to the statement, such as . . . the accused's presentation before a magistrate for a determination of probable cause. . . ." *Brown v. Illinois,* 422 U.S. at 611, 95 S.Ct. at 2265 (Powell, J., concurring).

■ In the present case appellant was given his statutory warnings by a Fort Bend County magistrate, under Tex.Code Crim.P.Ann. art. 15.17 (Vernon 1977). The magistrate's warnings did not legitimize the illegal arrest, because the magistrate did not find probable cause existed for the

arrest, as he is empowered to do at an examining trial. *See id.* at art. 16.01. Under such circumstances, the magistrate's warnings did not purge the taint of the illegal arrest.

The final factor pronounced by the Court in *Brown* is the purpose and flagrancy of the illegal police conduct. 422 U.S. at 604, 95 S.Ct. at 2262. The State argues that the officers did not flagrantly abuse appellant's rights. *Cf. Green v. State,* 615 S.W.2d 700 (Tex.Crim.App.1980) (police illegally seized appellant in his apartment in middle of night), *cert. denied,* 454 U.S. 952, 102 S.Ct. 490, 70 L.Ed.2d 258 (1981); *Duncan v. State,* 639 S.W.2d 314 (Tex.Crim. App.1982) (facts similar to *Green* ). The State concludes that Sergeant Webber "was not on a fishing expedition for evidence," but was simply interviewing appellant as a witness.

The State's characterization of the purpose for the arrest ignores Webber's own testimony that his motive in detaining appellant was "to give us ample time to make a complete search and interview everybody we needed to interview." The record reflects that the purpose behind appellant's detention in the absence of probable cause to arrest was to give the police time to develop evidence that would support a legal arrest. Such "purposefulness" is of the exact type condemned by the *Brown* Court. 422 U.S. at 605, 95 S.Ct. at 2262. *Ussery v. State,* 651 S.W.2d at 771.

■ The admission of appellant's exculpatory statement was not harmless error. Although, if the statement were excluded, the evidence would still be sufficient to support the conviction, we cannot say "beyond a reasonable doubt that the error made no contribution to the conviction or to the punishment." Tex.R.App.P. 81(b)(2). The State attempted at trial to discredit appellant's statement. Witnesses testified that they had not seen appellant at a nightclub he claimed to have visited on the night of the murders. Most notably, the State emphasized that appellant reported that he had fled the house without approaching his father when he saw his body on fire. Because blood on appellant's pant leg was identified as his father's, the State argued that appellant had lied when he stated that he ran out of the house without approaching his father's body.

The second point of error is sustained.

In four points of error, appellant complains that the evidence was insufficient to support his conviction.

In reviewing the sufficiency of direct or circumstantial evidence, we must view the evidence in the light most favorable to the verdict to determine whether any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Garrett v. State,* 682 S.W.2d 301, 304 (Tex.Crim.App.1984), *cert. denied,* 471 U.S. 1009, 105 S.Ct. 1876, 85 L.Ed.2d 168 (1985). The "exclusion of reasonable hypotheses" test may be used as one means of analyzing the sufficiency of circumstantial evidence cases. *Id.*

James R. Bolding, the supervisor of the serology section of the Houston Police Crime Laboratory, testified that he examined blood samples taken from the scene and from appellant's clothing. He testified that Henry Lewis Sr. had type O blood; all other members of the family, including appellant, had type A blood. Bolding identified samples taken from appellant's shirt as being both type A and type O. Samples from the appellant's trousers and shoes were type O. A sample taken from a large stain on the lower trouser leg indicated that the blood there had not been exposed to fire.

Appellant argues that his clothing was stained after the murders, when he was "bouncing off the walls" of his home because of his grief. Police reports support his contention that there was a great deal of blood at the scene.

Herbert MacDonnell, the bloodstain expert, testified that the patterns of the blood on appellant's clothing was consistent with the hypothesis that the wearer of those clothes was present at a beating, stabbing, or shooting. There were over 50 spatters of blood on the appellant's shirt, and over 100 on his trousers. MacDonnell testified that the spatters resulted from the applica-

tion of energy to a blood source, and were not produced by wiping or other contact with the blood at the scene. MacDonnell explained that blood on the walls of the house would have dried so quickly that it could not have spattered onto appellant's clothing as he was "bouncing off the walls." MacDonnell further testified that the spatters on the back of appellant's trousers was caused by the "cast-off" of blood from an object lifted over the wearer's head, such as would occur during a violent beating.

Buster Wayne Emmons, an arson investigator with the Houston Fire Department, testified that a flammable accelerant such as gasoline or lighter fluid was used to set Henry Lewis Sr.'s body on fire. Emmons testified that the fire was one of "very short" duration.

Robert T. Fleming, a firearms examiner with the Houston Police Department, testified that a .38 caliber handgun, possibly a Smith and Wesson, was used to shoot each victim. Henry Lewis Jr. used a .38 Smith and Wesson at his job as a security guard. A fellow employee testified that Lewis Jr. kept his gun in his car trunk. Lewis Jr.'s gun was never found. A set of keys to Lewis Jr.'s car was found in appellant's car.

In reviewing the sufficiency of circumstantial evidence, this Court must accept the inculpatory testimony as true and determine whether the testimony could be explained by a reasonable hypothesis other than the appellant's guilt. *Girard v. State,* 631 S.W.2d 162, 164 (Tex.Crim.App.1982). It is not necessary that every fact point directly and independently to the guilt of appellant, and the cumulative force of all the incriminating circumstances may be sufficient to warrant a conclusion that he is guilty. *Vaughn v. State,* 607 S.W.2d 914, 921 (Tex.Crim.App.1980).

■ The testimony, if believed, establishes that appellant was at the scene of his father's murder. MacDonnell stated that the blood on appellant's clothes could not have been transferred from the walls of the house. Lewis Sr.'s blood-type was unique among members of his family, and

the testimony proved that the type O blood spatters were placed on the trousers at the time of the murder, before the body was set on fire. Other testimony indicated that the fire was set only a short time before appellant appeared at his neighbor's house. Testimony also established that appellant had access to his brother's pistol, the possible murder weapon.

We find the evidence sufficient to support appellant's conviction.

The third through sixth points of error are overruled.

In his final point of error, appellant complains that the prosecutors' jury arguments referred to matters that were not supported by the record.

■ Proper jury argument includes (1) summations of the evidence; (2) reasonable deductions from the evidence; (3) answers to the argument of opposing counsel; and (4) pleas for law enforcement. *Todd v. State,* 598 S.W.2d 286 (Tex.Crim.App.1980).

Appellant complains that the State argued that the majority of the blood stains found on appellant's clothes were type O. This argument was supported by James Bolding's testimony that eight of the ten samples of blood that he examined were type O.

Appellant also objects to arguments that the blood on his trousers was there before his father's body was set on fire. These statements were reasonably based on Bolding's testimony that the blood was the same type as Lewis Sr.'s and that it had not been subjected to a fire's heat.

The prosecutor's argument that blood on the inside of appellant's jacket was transferred there from his shirt was a reasonable inference based on the evidence that blood appeared on his shirt and on the inside, but not the outside, of his jacket.

Appellant also objected at trial to the prosecutor's statement that neither Nathaniel Southern nor Ed Parker had any blood on their clothes, even though they had both been at the murder scene.

■ Southern testified that there was no blood on his clothes despite his presence

at the scene. Although the prosecutor incorrectly stated that the evidence showed that Parker had no blood on his clothes, the trial court warned the prosecutor to "stay in the evidence," at which time the prosecutor withdrew the statement. No harm is shown, because the argument was not manifestly improper; nor, in view of the trial court's warning, did the argument inject new facts into evidence. *Todd,* 598 S.W.2d at 297.

Finally, appellant complains that the prosecutor misrepresented the evidence by arguing that appellant, in his written statement, had explained that the blood on his clothes was placed there when he helped Keith Sherrod move his older brother's body.

Although appellant stated that he helped move his brother's body, he did not state that he had gotten blood on his clothes in doing so. The trial court cautioned the prosecutor to stay in the record. In light of the record as a whole, the prosecutor's argument was not so manifestly improper that it presented incurable error. *Id.*

The seventh point of error is overruled.

The judgments of the trial court are reversed and the causes remanded.