COURT OF APPEALS

SECOND DISTRICT OF TEXAS

FORT WORTH

NO. 2-06-452-CR

PAULA BROCK APPELLANT

V.

THE STATE OF TEXAS STATE

------------

FROM COUNTY CRIMINAL COURT NO. 5 OF DENTON COUNTY

------------

MEMORANDUM OPINION
(footnote: 1)

------------

I. Introduction

In two issues, Appellant Paula Brock appeals her conviction and sentence for felony driving while intoxicated (DWI).  We affirm.

II. Factual and Procedural History

On January 4, 2006, Appellant was speeding when she went airborne in her car and hit a tree.  A witness called for emergency assistance, and an ambulance took Appellant to the hospital.  A trooper who inventoried Appellant’s car found a half-empty bottle of Chardonnay in it.  A sample of blood was taken from Appellant at the hospital.  The sample had an alcohol concentration of approximately .327.  Appellant then the left the hospital without checking out.  

Appellant was charged by indictment on March 16, 2006, with the third- degree felony offense of DWI.  As a condition of her pretrial release on bond, Appellant was ordered to install and maintain an ignition interlock device on her car and to “[c]onsume no alcoholic beverages.”  

On August 31, 2006, the State notified Appellant that it intended to offer evidence at trial that Appellant had violated the conditions of her bond on May 19 and 26, 2006, as disclosed by records generated by the ignition interlock device that had been installed on Appellant’s car.  Specifically, the State notified Appellant that it intended to offer evidence showing that Appellant committed a violation of the Smart Start ignition interlock device by failing a retest while the engine was running and by failing to provide a passing test before the engine was turned off.  Appellant filed a motion to exclude the State’s admission of the ignition interlock device evidence based on two grounds.  First, Appellant argued that the ignition interlock device was not scientifically reliable to identify and accurately return a “positive” test indicating the presence of alcohol on Appellant’s breath.  Second, Appellant argued that the ignition interlock device was not scientifically reliable to establish that Appellant had consumed an alcoholic beverage in violation of her pretrial bond.  The trial court overruled Appellant’s motion, and therefore did not conduct a 
Kelly
 gatekeeper hearing. 

A jury trial began on September 18, 2006.  The trial court entered a plea of “not guilty” on Appellant’s behalf.  The jury found Appellant guilty and assessed her punishment at eight years’ confinement.  The trial court imposed that same sentence on September 20, 2006. This appeal followed.  This was Appellant’s third conviction for DWI; she had previously been convicted of misdemeanor DWI in 1991 and 2001.  She received community supervision the first conviction, and a thirty-day jail sentence for the second conviction. 

III. Scientific Evidence

In Appellant’s first issue, she claims that the trial court erred by failing to perform its gatekeeping function and by permitting the State to introduce scientific evidence derived from use of an ignition interlock device without first requiring the State to meet its burden under 
Kelly v. State
, 824 S.W.2d 568, 572 (Tex. Crim. App. 1992).
  

A. 
Kelly
 Gatekeeper Hearing

The Texas Court of Criminal Appeals has stated numerous times that a trial court’s responsibility under Texas Rule of Evidence 702 is to determine whether proffered scientific evidence is sufficiently reliable and relevant to assist the jury.
(footnote: 2)  
See Jackson v. State
, 17 S.W.3d 664, 670 (Tex. Crim. App. 2000).  Before scientific evidence may be admitted, the trial court must conduct a hearing outside the presence of the jury to determine whether the proponent has established by clear and convincing evidence that 
(1) the underlying scientific theory is valid; (2) the technique applying the theory is valid; and (3) the technique was properly applied on the occasion in question.
  Kelly
, 824 S.W.2d at 573.  This pre-admission determination is required whether the science at issue is novel or well-established.  
Jackson, 
17 S.W.3d at 670; 
Hartman v. State
, 946 S.W.2d 60, 63 (Tex. Crim. App. 1997)
.

The reason for the hearing is to determine whether the testimony is sufficiently reliable and relevant to help the jury in reaching accurate results, because unreliable scientific evidence will not assist the jury to understand the evidence or to accurately determine a fact in issue.  
Kelly
, 824 S.W.2d at 572.  When a trial judge holds a gatekeeper hearing, the judge at least has both parties and their witnesses before him.  
See Hernandez v. State,
 116 S.W.3d 26, 31 n.11 (Tex. Crim. App. 2003).  The judge may ask questions of the expert witnesses, request more information, ask for additional briefing, or seek clarification in determining the scientific reliability of the information presented.
  Id.

B. Exception to 
Kelly 
Gatekeeper Hearing

The court of criminal appeals has established one exception to the requirement that a trial court must conduct a 
Kelly 
hearing prior to the admission of scientific evidence.  In 
Hernandez, 
the court stated that a party seeking to introduce evidence of a scientific principle need not always present expert testimony, treatises, or other scientific material to satisfy the first two criteria of the 
Kelly 
test. 
 See id. 
at 28-29. 
 It is only at the dawn of judicial consideration of a particular type of forensic scientific evidence that trial courts must conduct full-blown “gatekeeping” hearings under 
Kelly
.  
Id.
  Trial courts are not required to re-invent the scientific wheel in every trial.  
Id. 
 Some court, somewhere, has to conduct an adversarial gatekeeping hearing to determine the reliability of the given scientific theory and its methodology.  
Id. 
 There is no “bright line” judicial rule for when a scientific theory or technique becomes so widely accepted or persuasively proven that future courts may take judicial notice of its reliability.  
Id.
 at 29 n.6.  However, if the court of criminal appeals, this court, or another Texas appellate court has already determined the validity of a particular scientific theory or technique, then the party offering the expert testimony need not satisfy 
Kelly’s 
first two criteria. 
 See id. 
at 27.  The trial court and a reviewing court can rely upon prior opinions and take judicial notice of those findings. 
 See id.
 at 31 n.12.
(footnote: 3) 

In this case, the trial court did not conduct a hearing outside the presence of the jury to determine whether the State established by clear and convincing evidence that the ignition interlock device met all three criteria set forth in 
Kelly
.
 The exception set forth in 
Hernandez 
did not apply because the parties have not cited, and we have not found, any authority establishing that the court of criminal appeals, this court, or any other Texas appellate court has determined the reliability of the ignition interlock device.  Thus, the trial court was not able to take judicial notice of the evidence.  Had this particular trial judge previously conducted numerous 
Kelly
 gatekeeper hearings on precisely this issue and had repeatedly found evidence of the use of the ignition interlock device  scientifically reliable, then he or the State could have put that in the record along with materials from those previous hearings.
(footnote: 4) 
 See Hernandez
, 116 S.W.3d at 30 (holding that if the trial judge had previously conducted numerous 
Kelly
 gatekeeper hearings on precisely the same issue and had repeatedly found it scientifically reliable, then either the State or the trial judge should put that on the record along with material from those previous hearings).  Although the use of ignition interlock devices has increased in recent years, we conclude that at this point there has not been sufficient inquiry through adversarial gatekeeper hearings to determine the reliability of the scientific theory so that judicial notice may be taken. 

Because the ignition interlock evidence offered by the State was scientific in nature, the trial court erred in failing to hold a gatekeeper hearing as requested by Appellant and as required by 
Kelly
.  
See Chisum v. State
, 988 S.W.2d 244, 249 (Tex. App.—Texarkana 1998, pet. ref’d). 
 We must now determine whether the error requires reversal.

IV. Harm

To determine whether an error calls for reversal of the judgment we must conduct 
a harm analysis.  
See 
Tex. R. App. P.
 44.2.  Because the erroneous admission of evidence is nonconstitutional error, we apply rule 44.2(b) to conduct our harm analysis.  
Tex. R. App. P.
 44.2(b); 
see Potier v. State
, 68 S.W.3d 657, 662-63 (Tex. Crim. App. 2002); 
King v. State
, 953 S.W.2d 266, 271 (Tex. Crim. App. 1997). 
 Under rule 44.2(b), we are to disregard any error unless it affects Appellant’s substantial rights.  
Tex. R. App. P.
 44.2(b)
.  A substantial right is affected when the error had a substantial, injurious effect or influence on the jury’s verdict. 
 
King, 
953 S.W.2d at 271; 
Coggeshall v. State
, 961 S.W.2d 639, 642-43 (Tex. App.—Fort Worth 1998, pet. ref’d). 
 We do not reverse after examining the record as a whole if we have fair assurance that the error did not influence the jury or had but a slight effect.  
Johnson v. State
, 967 S.W.2d 410, 417 (Tex. Crim. App. 1998).  It is well established that the improper admission of evidence does not constitute reversible error if the same facts are proved by other properly admitted evidence.  
See Brooks v. State
, 990 S.W.2d 278, 287 (Tex. Crim. App. 1999) (holding that any error in the admission of hearsay testimony was harmless in light of other properly admitted evidence proving the same fact), 
cert. denied
, 528 U.S. 956 (1999)
; 
Matz v. State,
 21 S.W.3d 911, 912 (Tex. App.—Fort Worth 2000, pet. ref’d). 

Appellant argues that because the crux of the State’s argument that she was not suitable for community supervision was based on the results of the ignition interlock tests, her substantial rights were affected.  Specifically, Appellant contends that it was on the basis of the ignition interlock tests that the State claimed that Appellant operated a motor vehicle after consuming alcoholic beverages, both during a previous term of community supervision, and after being released on bond in the present case.  Appellant argues that there can be no fair assurance that her substantial rights were not affected when the State put such emphasis on the erroneously admitted evidence.

After reviewing the record, we do not agree with Appellant that the State emphasized the interlock testimony to the point of affecting her substantial rights, because the same facts proven by the interlock device testimony were also proved by other properly admitted evidence.  
See Brooks
, 990 S.W.2d at 287.  
For example, the testimony concerning the interlock device was not the only evidence that the State presented to demonstrate that Appellant was unlikely to abide by the terms and conditions of community supervision.  The State only briefly referred to the interlock results in its punishment phase opening and closing arguments, whereas it put a great deal of emphasis on the testimony of Appellant’s former probation officer, Christy Martin, in its effort to show that Appellant was not suitable for community supervision.  Martin was Appellant’s probation officer after her 2001 DWI conviction.  She testified that Appellant admitted that she drank on two occasions while on community supervision from 2001 to 2003.  Martin also testified that it was her opinion that Appellant should not receive community supervision because Appellant had continued to drink even though a condition of her community supervision prohibited her from doing so.
(footnote: 5)  Martin further opined that the only way to prevent someone from drinking and driving again was to “put someone behind bars,” and that the best place for a person with a third DWI was prison.  The jury heard Martin reinforce her opinion several times that Appellant was not a suitable candidate for community supervision.  Therefore, any influence the interlock device evidence may have had on the jury was merely cumulative of other evidence that put forth the same or similar facts, and therefore the interlock device evidence did not have an injurious effect on Appellant
. 
 See Matz, 
21 S.W.3d at 912. 

Appellant also contends that the State emphasized the interlock tests to show that Appellant had consumed alcoholic beverages while released on bond, and that such emphasis on the erroneously admitted evidence violated her substantial rights.  Again, we conclude that the State’s emphasis on the interlock results had nothing more than a slight influence on the jury because the same facts proven by the interlock device testimony were also proved by other properly admitted evidence and thus, the evidence was merely cumulative.  
See Brooks
, 990 S.W.2d at 287; 
Johnson
, 967 S.W.2d at 417.  During the State’s closing argument on punishment, the State did not reference either the Smart Start director’s testimony or the interlock results.  Rather, the State referred to Appellant’s own testimony, in which she stated that she had been sober for four months.
(footnote: 6)  The State merely pointed out to the jury that at the time of trial it was September, and the charged offense had occurred in January.  The jury could have easily deduced that Appellant consumed alcoholic beverages after her accident and while on bond, given her testimony that she had not had a drink in four months, which would have only dated back to June.  Considering that Appellant’s own testimony allowed this logical inference, we do not think that the results of the interlock tests that gave the specific dates of the violations had anything more than a slight effect on the jury.
(footnote: 7)
 Even without the erroneous admission of the interlock device evidence, there was still evidence that showed that Appellant was not a suitable candidate for community supervision.  In evaluating the effect of the erroneous admission of the interlock device evidence, we may examine the presence of overwhelming evidence of Appellant’s guilt as a factor in determining whether the error 
had a substantial and injurious effect or influence in determining the jury’s verdict. 
 Motilla v. State
, 78 S.W.3d 352, 357 (Tex. Crim. App. 2002); 
King
, 953 S.W.2d at 271; 
Coggeshall,
 961 S.W.2d at 643. 
 We conclude that even if we disregarded the testimony about Appellant’s interlock violations, there was still sufficient evidence in the record to support the jury’s conviction and assessment of an eight-year prison term rather than community supervision.  First, the jury was able to consider evidence that Appellant missed hitting another driver by only about five feet.  They learned that at the time of the accident Appellant’s blood alcohol level was approximately four times the legal limit at .327.  The jury heard Appellant’s own testimony in which she stated that her 2001 DWI offense was not her fault despite the fact that her blood alcohol level had reached .30.  The jury also heard Appellant testify that the six empty beer cans found in her car after her 2001 arrest were there because she was going to recycle them.  Furthermore, the jury could have questioned whether Appellant took responsibility for her DWI offenses based on her testimony.  Appellant testified that she received thirty days of jail time for her second DWI offense because “my attorney didn’t really have my best [interests at] heart.”  The evidence of Appellant’s guilt and refusal to take responsibility for her repeated offenses was a relevant factor that the jury reasonably could have considered when determining whether to assess community supervision. 

For these reasons we conclude that the admission of testimony regarding Appellant’s violations of the interlock tests did not have a substantial or injurious effect on the jury’s decision.  
See Solomon v. State
, 49 S.W.3d 356, 365 (Tex. Crim. App. 2001).  Consequently, we hold that the trial court’s error was harmless.
  
We overrule Appellant’s second issue.

V. Conclusion

Having overruled both of Appellant’s issues, we affirm the trial court’s judgment. 

BOB MCCOY

JUSTICE

PANEL A: HOLMAN, GARDNER, and MCCOY, JJ.

DO NOT PUBLISH

Tex. R. App. P.
 47.2(b)

DELIVERED:  November 1, 2007

FOOTNOTES
1:
See
 
Tex. R. App. P.
 47.4.

2:
Because of its nature, scientific evidence will almost always be offered through the testimony of experts.  
See id. 
at 573. 

3:
For example, a court may take judicial notice of the reliability of a well- established scientific theory and technique, such as the theory and technique underlying the intoxilyzer.  
See Emerson v. State
, 880 S.W.2d 759, 764 (Tex. Crim.  App. 1994); 
Scherl v. State
, 7 S.W.3d 650, 653 (Tex. App.—Texarkana 1999, pet. ref’d).

 
 Both the first and tenth district appellate courts have taken judicial notice of blood splatter analysis.  
See Holmes v. State
, 135 S.W.3d 178, 188 (Tex. App.—Waco 2004, no pet.)
; Lewis v. State
, 737 S.W.2d 857, 860 (Tex. App.—Houston [1st Dist] 1987, pet. ref’d)
.

Texas courts permit judicial notice of DNA testing because the reliability of such testing is generally known.  
See
, 
e.g.
, 
Campbell v. State
, 910 S.W.2d 475, 479 (Tex. Crim. App.),
 cert. denied
, 517 U.S. 1140 (1995); 
Harris v. State, 
No.  02-03-00417-CR, 2005 WL 2100466, at *4 (Tex. App.—Fort Worth Aug. 31, 2005, no pet.) (mem. op.) (not designated for publication).

4:
There is nothing in the record to indicate that the trial court took judicial notice of the evidence or had found the evidence reliable through prior 
Kelly 
gatekeeping hearings. 

5:
Q: [C]an you tell me why this Defendant would still not be suitable, if that’s your opinion, for probation? 

A: I believe–the reason I said I do not believe she would be a suitable candidate for probation is despite the electronic monitoring and the attendance of counseling throughout the duration of her probation, she still drank at points and times during this probation. 

6:
[Prosecutor]:Have you had anything to drink since January of 2006?

[Appellant]: I haven’t had a drink in four months.

7:
Appellant argues that the State has taken her testimony out of context and claims that she calculates her sobriety according to the date she began attending Alcoholics Anonymous in May 2006.  While Appellant may in fact calculate her sobriety according to this date, it cannot be overlooked that when asked if she had had anything to drink since January 2006, she responded that she had not had a drink in four months.