COURT
OF APPEALS

                                       SECOND
DISTRICT OF TEXAS

                                                   FORT
WORTH

 

 

                                        NO.
2-06-452-CR

 

 

PAULA BROCK                                                                    APPELLANT

 

                                                   V.

 

THE STATE OF TEXAS                                                                STATE

 

                                              ------------

 

         FROM
COUNTY CRIMINAL COURT NO. 5 OF DENTON COUNTY

 

                                              ------------

 

                                MEMORANDUM
OPINION[1]

 

                                              ------------

I. Introduction

In two issues, Appellant
Paula Brock appeals her conviction and sentence for felony driving while
intoxicated (DWI).  We affirm.

 

 








II. Factual and Procedural
History

On January 4, 2006, Appellant
was speeding when she went airborne in her car and hit a tree.  A witness called for emergency assistance,
and an ambulance took Appellant to the hospital.  A trooper who inventoried Appellant=s car found a half-empty bottle of Chardonnay in it.  A sample of blood was taken from Appellant at
the hospital.  The sample had an alcohol
concentration of approximately .327. 
Appellant then the left the hospital without checking out.  

Appellant was charged by
indictment on March 16, 2006, with the third- degree felony offense of
DWI.  As a condition of her pretrial
release on bond, Appellant was ordered to install and maintain an ignition
interlock device on her car and to A[c]onsume no alcoholic beverages.@  








On August 31, 2006, the State
notified Appellant that it intended to offer evidence at trial that Appellant
had violated the conditions of her bond on May 19 and 26, 2006, as disclosed by
records generated by the ignition interlock device that had been installed on
Appellant=s car.  Specifically, the State notified Appellant
that it intended to offer evidence showing that Appellant committed a violation
of the Smart Start ignition interlock device by failing a retest while the
engine was running and by failing to provide a passing test before the engine
was turned off.  Appellant filed a motion
to exclude the State=s admission
of the ignition interlock device evidence based on two grounds.  First, Appellant argued that the ignition
interlock device was not scientifically reliable to identify and accurately
return a Apositive@ test indicating the presence of alcohol on Appellant=s breath.  Second, Appellant
argued that the ignition interlock device was not scientifically reliable to
establish that Appellant had consumed an alcoholic beverage in violation of her
pretrial bond.  The trial court overruled
Appellant=s motion,
and therefore did not conduct a Kelly gatekeeper hearing. 

A jury trial began on
September 18, 2006.  The trial court
entered a plea of Anot guilty@ on Appellant=s
behalf.  The jury found Appellant guilty
and assessed her punishment at eight years= confinement.  The trial court
imposed that same sentence on September 20, 2006. This appeal followed.  This was Appellant=s third conviction for DWI; she had previously been convicted of
misdemeanor DWI in 1991 and 2001.  She
received community supervision the first conviction, and a thirty-day jail
sentence for the second conviction. 

III. Scientific Evidence








In Appellant=s first issue, she claims that the trial court erred by failing to perform
its gatekeeping function and by permitting the State to introduce scientific
evidence derived from use of an ignition interlock device without first
requiring the State to meet its burden under Kelly v. State, 824 S.W.2d
568, 572 (Tex. Crim. App. 1992).  

A. Kelly Gatekeeper Hearing

The Texas Court of Criminal
Appeals has stated numerous times that a trial court=s responsibility under Texas Rule of Evidence 702 is to determine
whether proffered scientific evidence is sufficiently reliable and relevant to
assist the jury.[2]  See Jackson v. State, 17 S.W.3d 664,
670 (Tex. Crim. App. 2000).  Before
scientific evidence may be admitted, the trial court must conduct a hearing
outside the presence of the jury to determine whether the proponent has
established by clear and convincing evidence that (1) the underlying scientific
theory is valid; (2) the technique applying the theory is valid; and (3) the
technique was properly applied on the occasion in question.  Kelly, 824 S.W.2d at 573.  This pre‑admission determination is
required whether the science at issue is novel or well-established.  Jackson, 17 S.W.3d at 670; Hartman
v. State, 946 S.W.2d 60, 63 (Tex. Crim. App. 1997).








The reason for the hearing is
to determine whether the testimony is sufficiently reliable and relevant to
help the jury in reaching accurate results, because unreliable scientific
evidence will not assist the jury to understand the evidence or to accurately
determine a fact in issue.  Kelly,
824 S.W.2d at 572.  When a trial judge
holds a gatekeeper hearing, the judge at least has both parties and their
witnesses before him.  See Hernandez
v. State, 116 S.W.3d 26, 31 n.11 (Tex. Crim. App. 2003).  The judge may ask questions of the expert
witnesses, request more information, ask for additional briefing, or seek
clarification in determining the scientific reliability of the information
presented.  Id.

B. Exception to Kelly Gatekeeper
Hearing








The court of criminal appeals
has established one exception to the requirement that a trial court must
conduct a Kelly hearing prior to the admission of scientific
evidence.  In Hernandez, the court
stated that a party seeking to introduce evidence of a scientific principle
need not always present expert testimony, treatises, or other scientific
material to satisfy the first two criteria of the Kelly test.  See id. at 28-29.  It is only at the dawn of judicial
consideration of a particular type of forensic scientific evidence that trial
courts must conduct full‑blown Agatekeeping@ hearings
under Kelly.  Id.  Trial courts are not required to re‑invent
the scientific wheel in every trial.  Id.
 Some court, somewhere, has to
conduct an adversarial gatekeeping hearing to determine the reliability of the
given scientific theory and its methodology. 
Id.  There is no Abright line@ judicial
rule for when a scientific theory or technique becomes so widely accepted or
persuasively proven that future courts may take judicial notice of its
reliability.  Id. at 29 n.6.  However, if the court of criminal appeals,
this court, or another Texas appellate court has already determined the
validity of a particular scientific theory or technique, then the party
offering the expert testimony need not satisfy Kelly=s first two criteria.  See id. at 27.  The trial court and a reviewing court can
rely upon prior opinions and take judicial notice of those findings.  See id. at 31 n.12.[3]









In this case, the trial court did not conduct a hearing outside
the presence of the jury to determine whether the State established by clear
and convincing evidence that the ignition interlock device met all three
criteria set forth in Kelly. The exception set forth in Hernandez did
not apply because the parties have not cited, and we have not found, any
authority establishing that the court of criminal appeals, this court, or any
other Texas appellate court has determined the reliability of the ignition
interlock device.  Thus, the trial court
was not able to take judicial notice of the evidence.  Had this particular trial judge previously
conducted numerous Kelly gatekeeper hearings on precisely this issue and
had repeatedly found evidence of the use of the ignition interlock device  scientifically reliable, then he or the State
could have put that in the record along with materials from those previous
hearings.[4]  See Hernandez,
116 S.W.3d at 30 (holding that if the trial judge had previously conducted
numerous Kelly gatekeeper hearings on precisely the same issue and had
repeatedly found it scientifically reliable, then either the State or the trial
judge should put that on the record along with material from those previous
hearings).  Although the use of ignition
interlock devices has increased in recent years, we conclude that at this point
there has not been sufficient inquiry through adversarial gatekeeper hearings
to determine the reliability of the scientific theory so that judicial notice
may be taken. 








Because the
ignition interlock evidence offered by the State was scientific in nature, the
trial court erred in failing to hold a gatekeeper hearing as requested by
Appellant and as required by Kelly. 
See Chisum v. State, 988 S.W.2d 244, 249 (Tex. App.CTexarkana 1998, pet. ref=d).  We must now
determine whether the error requires reversal.

IV. Harm

 








To determine whether an error calls for reversal of the judgment
we must conduct a harm analysis.  See Tex. R. App. P. 44.2.  Because the erroneous admission of evidence
is nonconstitutional error, we apply rule 44.2(b) to conduct our harm
analysis.  Tex. R. App. P. 44.2(b); see Potier v. State, 68
S.W.3d 657, 662-63 (Tex. Crim. App. 2002); King v. State, 953 S.W.2d
266, 271 (Tex. Crim. App. 1997).  Under
rule 44.2(b), we are to disregard any error unless it affects Appellant=s substantial rights.  Tex.
R. App. P. 44.2(b).  A substantial
right is affected when the error had a substantial, injurious effect or influence
on the jury=s verdict.  King, 953 S.W.2d at 271; Coggeshall
v. State, 961 S.W.2d 639, 642-43 (Tex. App.CFort Worth 1998, pet. ref=d).  We do not reverse after examining the record
as a whole if we have fair assurance that the error did not influence the jury
or had but a slight effect.  Johnson
v. State, 967 S.W.2d 410, 417 (Tex. Crim. App. 1998).  It is well established that the improper admission
of evidence does not constitute reversible error if the same facts are proved
by other properly admitted evidence.  See
Brooks v. State, 990 S.W.2d 278, 287 (Tex. Crim. App. 1999) (holding that
any error in the admission of hearsay testimony was harmless in light of other
properly admitted evidence proving the same fact), cert. denied, 528
U.S. 956 (1999); Matz v. State, 21 S.W.3d 911, 912 (Tex. App.CFort Worth 2000, pet. ref=d). 

Appellant argues that because the crux of the State=s argument that she was not
suitable for community supervision was based on the results of the ignition
interlock tests, her substantial rights were affected.  Specifically, Appellant contends that it was
on the basis of the ignition interlock tests that the State claimed that
Appellant operated a motor vehicle after consuming alcoholic beverages, both
during a previous term of community supervision, and after being released on
bond in the present case.  Appellant
argues that there can be no fair assurance that her substantial rights were not
affected when the State put such emphasis on the erroneously admitted evidence.













After reviewing the record, we do not agree with Appellant that
the State emphasized the interlock testimony to the point of affecting her
substantial rights, because the same facts proven by the interlock device
testimony were also proved by other properly admitted evidence.  See Brooks, 990 S.W.2d at 287.  For example, the testimony concerning the
interlock device was not the only evidence that the State presented to
demonstrate that Appellant was unlikely to abide by the terms and conditions of
community supervision.  The State only
briefly referred to the interlock results in its punishment phase opening and
closing arguments, whereas it put a great deal of emphasis on the testimony of
Appellant=s former probation officer,
Christy Martin, in its effort to show that Appellant was not suitable for
community supervision.  Martin was
Appellant=s probation officer after her
2001 DWI conviction.  She testified that Appellant
admitted that she drank on two occasions while on community supervision from
2001 to 2003.  Martin also testified that
it was her opinion that Appellant should not receive community supervision
because Appellant had continued to drink even though a condition of her
community supervision prohibited her from doing so.[5]  Martin further
opined that the only way to prevent someone from drinking and driving again was
to Aput someone behind bars,@ and that the best place for a person with a third DWI was
prison.  The jury heard Martin reinforce
her opinion several times that Appellant was not a suitable candidate for
community supervision.  Therefore, any
influence the interlock device evidence may have had on the jury was merely
cumulative of other evidence that put forth the same or similar facts, and
therefore the interlock device evidence did not have an injurious effect on
Appellant.  See Matz, 21 S.W.3d at
912. 








Appellant also contends
that the State emphasized the interlock tests to show that Appellant had
consumed alcoholic beverages while released on bond, and that such emphasis on
the erroneously admitted evidence violated her substantial rights.  Again, we conclude that the State=s emphasis on the interlock results had nothing more than
a slight influence on the jury because the same facts proven by the interlock
device testimony were also proved by other properly admitted evidence and thus,
the evidence was merely cumulative.  See
Brooks, 990 S.W.2d at 287; Johnson, 967 S.W.2d at 417.  During the State=s closing argument on punishment, the State did not
reference either the Smart Start director=s testimony or the interlock results.  Rather, the State referred to Appellant=s own testimony, in which she stated that she had been
sober for four months.[6]  The State merely pointed out to the jury that
at the time of trial it was September, and the charged offense had occurred in
January.  The jury could have easily
deduced that Appellant consumed alcoholic beverages after her accident and
while on bond, given her testimony that she had not had a drink in four months,
which would have only dated back to June. 
Considering that Appellant=s own testimony allowed this logical inference, we do not
think that the results of the interlock tests that gave the specific dates of
the violations had anything more than a slight effect on the jury.[7]








Even without the
erroneous admission of the interlock device evidence, there was still evidence
that showed that Appellant was not a suitable candidate for community
supervision.  In evaluating the effect of
the erroneous admission of the interlock device evidence, we may examine the
presence of overwhelming evidence of Appellant=s guilt as a factor in determining whether the error had a
substantial and injurious effect or influence in determining the jury=s verdict.  Motilla v. State, 78 S.W.3d 352, 357 (Tex.
Crim. App. 2002); King, 953 S.W.2d at 271; Coggeshall, 961 S.W.2d
at 643.  We conclude that even if we
disregarded the testimony about Appellant=s interlock violations, there was still sufficient
evidence in the record to support the jury=s conviction and assessment of an eight-year prison term
rather than community supervision. 
First, the jury was able to consider evidence that Appellant missed
hitting another driver by only about five feet. 
They learned that at the time of the accident Appellant=s blood alcohol level was approximately four times the
legal limit at .327.  The jury heard
Appellant=s own testimony in which she stated that her 2001 DWI
offense was not her fault despite the fact that her blood alcohol level had
reached .30.  The jury also heard
Appellant testify that the six empty beer cans found in her car after her 2001
arrest were there because she was going to recycle them.  Furthermore, the jury could have questioned
whether Appellant took responsibility for her DWI offenses based on her
testimony.  Appellant testified that she
received thirty days of jail time for her second DWI offense because Amy attorney didn=t really have my best [interests at] heart.@  The evidence of
Appellant=s guilt and refusal to take responsibility for her
repeated offenses was a relevant factor that the jury reasonably could have
considered when determining whether to assess community supervision. 








For these reasons
we conclude that the admission of testimony regarding Appellant=s violations of the interlock tests did not have a
substantial or injurious effect on the jury=s decision.  See
Solomon v. State, 49 S.W.3d 356, 365 (Tex. Crim. App. 2001).  Consequently, we hold that the trial court=s error was harmless. 
We overrule Appellant=s second issue.

V. Conclusion

 

Having overruled
both of Appellant=s issues, we affirm the trial court=s judgment. 

BOB MCCOY

JUSTICE

 

PANEL A:   HOLMAN, GARDNER, and MCCOY, JJ.

 

DO NOT PUBLISH

Tex. R. App. P. 47.2(b)

 

DELIVERED:  November 1, 2007











[1]See Tex. R. App. P. 47.4.





[2]Because
of its nature, scientific evidence will almost always be offered through the
testimony of experts.  See id. at
573. 

 





[3]For
example, a court may take judicial notice of the reliability of a well-
established scientific theory and technique, such as the theory and technique
underlying the intoxilyzer.  See
Emerson v. State, 880 S.W.2d 759, 764 (Tex. Crim.  App. 1994); Scherl v. State, 7 S.W.3d
650, 653 (Tex. App.CTexarkana
1999, pet. ref=d).

 

        Both
the first and tenth district appellate courts have taken judicial notice of
blood splatter analysis.  See Holmes
v. State, 135 S.W.3d 178, 188 (Tex. App.CWaco 2004, no pet.); Lewis
v. State, 737 S.W.2d 857, 860 (Tex. App.CHouston [1st Dist] 1987, pet.
ref=d).

 

Texas courts permit judicial notice of DNA testing because the
reliability of such testing is generally known. 
See, e.g., Campbell v. State, 910 S.W.2d 475, 479
(Tex. Crim. App.), cert. denied, 517 U.S. 1140 (1995); Harris v.
State, No.  02-03-00417-CR, 2005 WL
2100466, at *4 (Tex. App.CFort
Worth Aug. 31, 2005, no pet.) (mem. op.) (not designated for publication).





[4]There
is nothing in the record to indicate that the trial court took judicial notice
of the evidence or had found the evidence reliable through prior Kelly gatekeeping
hearings. 





[5]Q:
[C]an you tell me why this Defendant would still not be suitable, if that=s
your opinion, for probation? 

 

A: I believeBthe
reason I said I do not believe she would be a suitable candidate for probation
is despite the electronic monitoring and the attendance of counseling
throughout the duration of her probation, she still drank at points and times
during this probation. 





[6][Prosecutor]:Have
you had anything to drink since January of 2006?

 

[Appellant]: I haven=t had a drink in four months.





[7]Appellant
argues that the State has taken her testimony out of context and claims that
she calculates her sobriety according to the date she began attending
Alcoholics Anonymous in May 2006.  While
Appellant may in fact calculate her sobriety according to this date, it cannot
be overlooked that when asked if she had had anything to drink since January
2006, she responded that she had not had a drink in four months.