Opinion issued April 21, 2011



In The

Court of
Appeals

For The

First District
of Texas

————————————

NO. 01-09-00979-CR

———————————

Rudolf Leon Smith, Appellant

V.

The State of
Texas, Appellee



 



 

On Appeal from the 183rd District Court

Harris County, Texas



Trial Court Case No. 1105260

 



 

MEMORANDUM OPINION

          After
the trial court denied his motion to suppress evidence, appellant, Rudolf Leon
Smith, pleaded guilty to the offense of murder.[1]  Pursuant to an agreed recommendation by the
State, the trial court assessed punishment at forty years’ confinement.  In one issue on appeal, appellant contends
that the trial court abused its discretion in denying his motion to suppress
his confession because appellant unambiguously invoked his right to counsel
during custodial interrogation.

          We
affirm.

Background

          On
January 29, 2007, Houston Police Department (“HPD”) officers discovered the
body of the complainant, Gelandra Yvonne Word, in a motel room.  A few days after Gelandra’s murder, two of
her friends contacted HPD Lieutenant M. Walker and suggested that appellant,
who was romantically involved with Gelandra, might be connected to her murder.  Lieutenant Walker learned that appellant had
rented the motel room in which the police found Gelandra’s body, and, thus,
Walker believed that appellant was either a suspect or the last person who had
seen Gelandra alive other than her murderer.

          Lieutenant
Walker, along with HPD Sergeant A. Semmelrock and Officer S.T. Hufstedler,
first interviewed appellant on February 7, 2007, after he had been arrested on
an unrelated narcotics charge.  An audio
recording was made of the interview, and the trial court admitted into evidence
a copy of the recording and a written transcript of the interview at
appellant’s suppression hearing.  At the
beginning of the interview, Lieutenant Walker read appellant his Miranda warnings, and appellant
indicated that he understood each of them. 
When asked if he was willing to talk to the officers about Gelandra’s
murder, appellant responded, “I can’t really—I can’t really talk about anything I don’t know, sir.”  Appellant continued the interview, however,
and stated that, although he knew Gelandra, he did not know her well and that he
had not seen her for approximately two or three weeks before the
interview.  Although appellant eventually
admitted that he allowed Gelandra to use his identification to rent a motel
room on the night that she died, he generally “minimize[d] his connection” to
her during this interview.

          During
this interview, Lieutenant Walker asked appellant if he would consent to
allowing the officers to perform a buccal swab to collect appellant’s DNA for
comparison purposes.  The officers and
appellant then had the following exchange:

Walker:       Alright, would you be willing to give us
a buccal swab—uh, do you give your consent to give us that today?

 

Appellant:  What is a buccal swab?

 

Walker:       It’s where we, it’s where we do a swab in
your mouth for skin cells for DNA that can be used to compare your DNA against
what we may have in the room . . . I mean, it would match
the cigarette [butts] or something like that . . . .

 

Hufstedler:  It’s just a big long q-tip you stick in the
back of your mouth and wipe around.

 

Appellant:  Do you
mind if I did have a lawyer?

 

Hufstedler:  It’s up to you.

 

Walker:       Yeah, I mean, we’re asking, it’s your
consent, we’re not gonna do anything without—we’re not doing anything
without you wanting to or not, so—

 

Appellant:  Yes sir.

 

Walker:       Uh, I mean, understand though, the reason
we’re getting at is, if you don’t have anything to do with this, uh, and right
now I don’t have any reason to doubt you, um, [the swab] is a way for you to
clear yourself now and get this behind you now, okay.

 

Appellant:  I’ll take it.

 

Walker:       . . . I want to make sure
that you don’t want a lawyer present to do that, if you, if you do, that’s
fine; if you don’t, I would like you to sign something that tells—that
lets us know that . . . you would be willing to do that and
then let us do the buccal swab or—

 

Appellant:  (Inaudible)

 

Walker:       Okay.

 

Hufstedler:  Do what? 
I’m sorry, I didn’t hear you.

 

Appellant:  I said I would, I wouldn’t mind doing it.

 

Hufstedler:  You don’t mind doing it?

 

Appellant:  No.

 

(Emphasis added.) 
The officers continued questioning appellant about Gelandra’s murder
before they took his DNA sample.  During
this questioning, appellant made no further mention of an attorney, and he made
no incriminating statements regarding any involvement in Gelandra’s death.

          Lieutenant
Walker did not “give up on [appellant] as a suspect,” and he interviewed
appellant, who was still in custody for the narcotics charge, a second time on
February 21, 2007.  This interview
occurred at the Harris County Sheriff’s Department so the officers could take
advantage of that department’s video-recording capabilities.  At the beginning of the interview, the
officers again read appellant his Miranda
rights, and appellant waived those rights. 
Lieutenant Walker testified that in order to establish some rapport with
appellant and to determine if he was willing to speak to the officers, he did
not immediately begin recording this interview. 
The officers spoke with appellant for approximately ten or twenty
minutes before turning on the video equipment. 
After appellant had spoken to the officers for a “fairly short period of
time” and while the video camera was still turned off, appellant confessed that
he had murdered Gelandra.  Appellant then
repeated his involvement in the murder in a recorded statement.  Appellant did not mention an attorney at any
point during this second interview.

          At
the suppression hearing, Lieutenant Walker testified that he interpreted
appellant’s statement in the first interview—“Do you mind if I did have a lawyer?”—as a “general question regarding procedure” and that he believed that
appellant was asking if it was acceptable to have an attorney present.  He did not believe that appellant had invoked
his right to counsel at any point during the first interview.  Lieutenant Walker also testified that at the
time of the first interview, appellant’s involvement in Gelandra’s murder was
still “unclear” to the officers.

          On
cross-examination, Lieutenant Walker reiterated that he believed that appellant
was asking if it was possible for him to have an attorney.  He did not believe that appellant was
specifically asking for or requesting an attorney.  Lieutenant Walker drew a distinction between a
suspect specifically asking for an attorney and a suspect asking if it was
possible for him to have an attorney present during the interview.  He agreed with defense counsel that his
statement to appellant that “right now, I don’t have any reason to doubt you”
was “not entirely true.”  He did not
agree that his statement was a complete lie because he had not yet made up his
mind regarding whether appellant was a suspect, although he admitted that
appellant was “certainly the closest thing [the police had]” to a suspect.  Lieutenant Walker also acknowledged that when
he told appellant that submitting to the buccal swab was a way for appellant to
clear himself and “get this behind” him, he said that because he wanted
appellant to continue cooperating with the officers and because he did not want
appellant to have an attorney with him in the interview.  He testified that his primary motivation
behind the statement was to persuade appellant to consent to the buccal swab.

          The
trial court denied appellant’s motion to suppress and issued the following
findings of fact and conclusions of law:

3.       That after the Defendant’s arrest, Lt.
[M.] Walker spoke with the Defendant on February 7, 2007, and again on February
21, 2007 in a recorded statement.

 

4.       That Lt. [M.] Walker is a credible
witness, and the Court accepts as true his testimony as to the manner in which
he obtained the recorded statement from the Defendant.

 

5.       The Court finds that at no time did Lt.
[M.] Walker coerce or threaten the Defendant into giving a statement, nor did
he either directly or indirectly promise the Defendant anything in exchange for
his statement.

 

. . . .

 

7.       That the Court finds that:

 

a.                
The Defendant was in custody at the time of the making of his statement
to Lt. [M.] Walker.

 

b.                
The Defendant was informed of his statutory warnings under Article 38.22
Sec. 2 Subsection (a) of the Texas Code of Criminal Procedure.

 

c.                 
The Defendant, prior to and during the making of the statement,
knowingly, intelligently and voluntarily waived the rights set out in the
warnings prescribed by Article 38.22 Sec. 2 Subsection (a).

 

d.                
The Defendant freely and voluntarily waived those rights.

 

Pursuant to an agreed punishment recommendation,
appellant pleaded guilty to the offense of murder.  In accordance with the plea agreement, the
trial court assessed punishment at forty years’ confinement.

 

Standard of Review

          We
review the denial of a motion to suppress for an abuse of discretion.  Shepherd
v. State, 273 S.W.3d 681, 684 (Tex. Crim. App. 2008) (citing State v. Dixon, 206 S.W.3d 587, 590
(Tex. Crim. App. 2006)).  When we review
a trial court’s denial of a motion to suppress, we give almost total deference
to the trial court’s express or implied determinations of historical facts
while reviewing de novo the court’s application of the law to those facts.  Id.;
Carmouche v. State, 10 S.W.3d 323,
327 (Tex. Crim. App. 2000).  We view the
evidence in the light most favorable to the trial court’s ruling.  Wiede
v. State, 214 S.W.3d 17, 24 (Tex. Crim. App. 2007) (quoting State v. Kelly, 204 S.W.3d 808, 818
(Tex. Crim. App. 2006)).  The trial court
is the “sole trier of fact and judge of the credibility of the witnesses and
the weight to be given to their testimony.” 
St. George v. State, 237
S.W.3d 720, 725 (Tex. Crim. App. 2007). 
The trial court may choose to believe or disbelieve any part or all of a
witness’s testimony.  Green v. State, 934 S.W.2d 92, 98 (Tex.
Crim. App. 1996).  We sustain the trial
court’s ruling if it is reasonably supported by the record and correct on any
theory of law applicable to the case.  Laney v. State, 117 S.W.3d 854, 857
(Tex. Crim. App. 2003).

Invocation of Right to Counsel

          In
his sole issue, appellant contends that the trial court abused its discretion
in denying his motion to suppress his confession because his question in the
first interview with the officers—“Do you mind if I did have a lawyer?”—clearly and unambiguously invoked his right to counsel.

Under the Fifth Amendment of the
United States Constitution, an accused has the right to have an attorney
present during custodial interrogation.  Edwards v. Arizona, 451 U.S. 477,
481–82, 101 S. Ct. 1880, 1883 (1981) (noting that right to counsel during interrogation
was first declared in Miranda); State v. Gobert, 275 S.W.3d 888, 892
(Tex. Crim. App. 2009); Mbugua v. State,
312 S.W.3d 657, 663 (Tex. App.—Houston [1st Dist.] 2009, pet. ref’d).  Once a suspect has invoked this right, police
interrogation must cease until counsel has been made available to the suspect
or the suspect himself initiates a dialogue with the police.  Edwards,
451 U.S. at 484–85, 101 S. Ct. at 1885; Gobert,
275 S.W.3d at 892.

          A
person in custody must unambiguously and unequivocally invoke his right to
counsel before police interrogation must cease. 
Davis v. United States, 512
U.S. 452, 458–62, 114 S. Ct. 2350, 2354–57 (1994); Gobert, 275 S.W.3d at 892.  Not
every mention of a lawyer will invoke the right to the presence of counsel
during the interrogation.  Gobert, 275 S.W.3d at 892; Mbugua, 312 S.W.3d at 664.  An ambiguous or equivocal statement regarding
counsel does not require officers to stop the interrogation or even to seek
clarification regarding the suspect’s desire for an attorney.  Davis,
512 U.S. at 461–62, 114 S. Ct. at 2356; Gobert,
275 S.W.3d at 892.

          Whether
the suspect’s particular mention of an attorney constitutes a clear invocation
of the right to counsel depends upon the statement itself and the totality of
the surrounding circumstances.  Gobert, 275 S.W.3d at 892 (citing Davis, 512 U.S. at 459, 114 S. Ct. at
2355); Mbugua, 312 S.W.3d at 664.  This is an objective test:  whether a reasonable officer, in light of the
circumstances, would have understood the statement to be a request for an
attorney or merely one that “might be invoking the right to counsel.”  Davis,
512 U.S. at 459, 114 S. Ct. at 2355; McNeil
v. Wisconsin, 501 U.S. 171, 178, 111 S. Ct. 2204, 2209 (1991) (“[Edwards] requires, at a minimum, some
statement that can reasonably be construed to be an expression of a desire for
the assistance of an attorney in dealing with custodial interrogation by the
police.”); Mbugua, 312 S.W.3d at 664.  “The suspect ‘must articulate his desire to
have counsel present sufficiently clearly that a reasonable police officer in
the circumstances would understand the statement to be a request for an
attorney.’”  Gobert, 275 S.W.3d at 893 (quoting Davis, 512 U.S. at 459, 114 S. Ct. at 2355); see also Dinkins v. State, 894 S.W.2d 330, 352 (Tex. Crim. App.
1995) (“While there ‘are no magical words required to invoke an accused’s right
to counsel,’ we believe that Davis
requires, at a minimum, that a suspect express a definite desire to speak with
someone, and that person be an attorney.”) (quoting Russell v. State, 727 S.W.2d 573, 576 (Tex. Crim. App. 1987)).

          Appellant
contends that by asking “Do you mind if I did have a lawyer?” he unambiguously
requested that he have an attorney present and that interpreting his statement
otherwise denies the plain meaning of the phrase “do you mind.”  The State contends that appellant’s statement
was not an unequivocal request for an attorney; rather, he was asking the
officers if they “minded,” or if it was possible for appellant to have, an
attorney present for the interview.  We
agree with the State.

          In Mbugua, we addressed whether the
defendant’s question—“Can I wait
until my lawyer gets here?”—was an
unequivocal request for counsel.  Mbugua, 312 S.W.3d at 664.  We held that the question “did not clearly
state a firm, unambiguous, and unqualified condition that any further
questioning must be conducted only with [the defendant’s] attorney present.”  Id.
at 665.  Instead, the question “was more
in the nature of an inquiry about the interview process and [the defendant’s]
options in regard to that process.”  Id. 
We concluded that the question was, “at best, an ambiguous articulation
of a desire for counsel.”  Id.; see
also Davis, 512 U.S. at 462, 114 S. Ct. at 2357 (holding that “Maybe I
should talk to a lawyer” was not unambiguous request for counsel); Gutierrez v. State, 150 S.W.3d 827, 832
(Tex. App.—Houston [14th Dist.] 2004, no pet.) (holding same regarding “Can I
have [my attorney] present now?”); Halbrook
v. State, 31 S.W.3d 301, 302, 304 (Tex. App.—Fort Worth 2000, pet. ref’d)
(holding same regarding “Do I get an opportunity to have my attorney
present?”); Flores v. State, 30
S.W.3d 29, 34 (Tex. App.—San Antonio 2000, pet. ref’d) (holding same regarding
“Will you allow me to speak to my attorney before?”).

          Here,
when asked if he would consent to a buccal swab for DNA comparison purposes,
appellant asked the interrogating officers, “Do you mind if I did have a
lawyer?”  At the suppression hearing,
Lieutenant Walker testified that he interpreted this question as a “general
question regarding procedure” and he believed that appellant was asking whether
it was possible for him to have an attorney present.  He did not believe that appellant was
invoking his right to counsel.  We
believe that this is a reasonable interpretation of appellant’s question.  Appellant’s question does not clearly and
unambiguously convey a desire to conduct the buccal swab and any further
questioning only with an attorney present. 
See Mbugua, 312 S.W.3d at 665;
see also Reed v. State, 227 S.W.3d
111, 116 (Tex. App.—Houston [1st Dist.] 2006, pet. ref’d) (holding that
question, “I can get a lawyer if I want one, right?” was not clear invocation of
right to counsel “because it did not indicate that appellant wanted to speak to
his attorney or that he wanted his attorney to be present during
questioning”).  At best, therefore,
appellant’s question is “an ambiguous articulation of a desire for
counsel.”  Mbugua, 312 S.W.3d at 665; see
also Russell, 727 S.W.2d at 576 (“[A]ppellant’s inquiry into the officer’s
opinion as to the necessity of counsel being present during interrogation
cannot be viewed as a clear invocation
of his right to counsel because his question asking another’s opinion does not
indicate his own assertion of his right.”) (emphasis in original).

          Although
the officers were not required to stop questioning appellant or even to clarify
whether he wanted an attorney after his ambiguous question, the officers here
attempted to ascertain whether appellant desired an attorney before returning
to substantive questioning and before performing the buccal swab.  See
Davis, 512 U.S. at 461–62, 114 S. Ct. at 2356; Gobert, 275 S.W.3d at 892. 
After appellant asked his question, he had the following exchange with
the officers:

Appellant:  Do you mind if I did have a lawyer?

 

Hufstedler:  It’s up to you.

 

Walker:       Yeah, I mean, we’re asking, it’s your
consent, we’re not gonna do anything without—we’re not doing anything
without you wanting to or not, so—

 

Appellant:  Yes sir.

 

Walker:       Uh, I mean, understand though, the reason
we’re getting at is, if you don’t have anything to do with this, uh, and right
now I don’t have any reason to doubt you, um, [the swab] is a way for you to
clear yourself now and get this behind you now, okay.

 

Appellant:  I’ll take it.

 

Walker:       . . . I want to make sure
that you don’t want a lawyer present to do that, if you, if you do, that’s
fine; if you don’t, I would like you to sign something that tells—that
lets know that . . .you would be willing to do that and then let
us do the buccal swab or—

 

At this point, appellant stated that he “wouldn’t
mind doing” the buccal swab, and he did not state that he wished to have an
attorney present for either the swab or for further questioning.  We therefore conclude that in response to
appellant’s ambiguous question regarding counsel, the officers confirmed that
appellant desired to proceed without an attorney and the officers properly
continued questioning appellant.

          Appellant
contends that the officers engaged in “highly deceptive” conduct designed to
encourage him to continue with the interrogation and to give an incriminating
statement and, thus, the trial court should have suppressed his confession.  See
Jamail v. State, 787 S.W.2d 372, 377 (Tex. Crim. App. 1990) (“[W]e do not
deem it improper for the interrogating officers to inquire of appellant if he
would now like to call his attorney, so long as the officer does not use the
moment as a guise in order to encourage, coerce, or intimidate the accused into
making a statement.”); Reed, 227
S.W.3d at 115 (stating same).  Appellant
specifically points to Lieutenant Walker’s statements that “right now [he does
not] have any reason to doubt [appellant]” and that the buccal swab is a “way
for [appellant] to clear [himself] now.”

          At
the suppression hearing, Lieutenant Walker conceded that his first statement
was not entirely truthful, although he stopped short of calling it a lie
because he had not yet made up his mind regarding whether appellant was a
suspect.  He also testified that he made
the second statement because he wanted appellant to continue cooperating with
the officers and, although he did not want appellant to have an attorney
present who might end the interview, he made the statement primarily to
convince appellant to take the buccal swab.

          Immediately
after appellant asked his question, Officer Hufstedler told appellant that the
decision to have an attorney present was “up to [him].”  Lieutenant Walker also told appellant that
the decision to submit to the swab was “[appellant’s] consent” and that the
officers would “not do[] anything without you wanting to.”  Lieutenant Walker then told appellant that he
wanted to make sure appellant did not want a lawyer present to do the swab, and
he stated that if appellant did wish to have an attorney present, “that’s
fine.”  Although Lieutenant Walker did
not want appellant to have an attorney present, he did not communicate this to
appellant, and none of the officers ever suggested to appellant that he should
or should not have an attorney present for the swab or for further
questioning.  See Mbugua, 312 S.W.3d at 664 (in response to defendant’s question of
whether he could wait until his lawyer arrived to answer questions, officer
stated, “[I]f you want to talk to a lawyer, we’ll have to cut off the interview
right now.  We can’t ask you anything
else.  We can’t speak to you anymore, and
you will not have an opportunity to give
your side of the story.”) (emphasis added).

          We
conclude that, based upon the totality of the circumstances, the officers here
did not use their responses to appellant’s inquiry as a “guise in order to
encourage, coerce, or intimidate the accused into making a statement.”[2]  See
Jamail, 787 S.W.2d at 377.  We
therefore hold that because the trial court reasonably could have concluded
that appellant’s question was an ambiguous and equivocal request for an
attorney, the court did not abuse its discretion in denying appellant’s motion
to suppress his confession.

          We
overrule appellant’s sole issue.

Conclusion

          We
affirm the judgment of the trial court.

 

                                                                   Evelyn
V. Keyes

                                                                   Justice


 

Panel
consists of Justices Keyes, Sharp, and Massengale.

Do
not publish.   Tex. R. App. P. 47.2(b).











[1]           See
Tex. Penal Code Ann.
§ 19.02(b) (Vernon 2003).





[2]
          We further note that, as the
State points out, police officers are not required to be completely truthful
when seeking a confession. 
“[V]oluntariness [of a confession] is not destroyed, and a confession
induced by deception or trickery is not inadmissible, unless the method used
was calculated to produce an untruthful confession or offensive to due
process.”  Snow v. State, 721 S.W.2d 943, 946 (Tex. App.—Houston [1st Dist.]
1986, no pet.); see also Creager v. State,
952 S.W.2d 852, 856 (Tex. Crim. App. 1997) (holding same).