NO. 07-11-00473-CR

IN THE COURT OF APPEALS

FOR THE SEVENTH DISTRICT OF TEXAS

AT AMARILLO

PANEL B

OCTOBER 30, 2012

PATRICIO JUAN MARTINEZ, APPELLANT

v.

THE STATE OF TEXAS, APPELLEE

FROM THE 286TH DISTRICT COURT OF HOCKLEY COUNTY;

NO. 11-05-7333; HONORABLE PAT PHELAN, JUDGE

Before QUINN, C.J., and CAMPBELL and HANCOCK, JJ.

**MEMORANDUM OPINION**

Appellant, Patricio Juan Martinez, was convicted of aggravated sexual assault of child younger than 14 years of age.[1] Appellant was sentenced to 50 years confinement in the Institutional Division of the Texas Department of Criminal Justice (ID-TDCJ). Appellant appeals through five issues, contending that (1) the trial court erred in admitting his confession over his Fifth Amendment objections; (2) the evidence was insufficient to sustain the conviction; (3) the trial court erred in admitting evidence of an extraneous offense; (4) the extraneous offense evidence, even if relevant, was

---

[1] See TEX. PENAL CODE ANN. § 22.021(a)(1)(A)(i), (2)(B) (West Supp. 2012).

inadmissible because the probative value was substantially outweighed by the danger of unfair prejudice; and (5) trial counsel rendered ineffective assistance of counsel to appellant. Disagreeing with appellant, we will affirm.

Factual and Procedural Background

On May 3, 2011, Deputy Sheriff James Scifres of the Hockley County Sheriff's Office took a report regarding a possible sexual assault of a minor, A.H.[2] The incident in question was reported to have occurred sometime in April 2011. As a result of this report, appellant, who was in jail on unrelated charges, was interviewed by the Sheriff of Hockley County, Kevin Davis. Davis conducted the interview and was assisted by two Texas Ranger Sergeants, Todd Snyder and Scotty Shivers. At the beginning of the interview, Davis read appellant his <u>Miranda</u> warnings.[3] Appellant does not contest that he acknowledged the receipt of the <u>Miranda</u> warnings and that he agreed to speak with the Sheriff. An audio recording was made of the interview.

Initially, the interview was focused on the reported sexual assault of April 2011. However, later in the interview, appellant was questioned about sexual acts that might have occurred with A.H. when she was 12 years of age. According to the recording, when the focus of the interview switched to any sexual activity that took place between appellant and A.H. when she was 12, appellant made the following statement: "Can I get a lawyer in here?" To this question, one of the officers replied, "You bet, you're

---

[2] The indictment indicates the minor's initials are H.H.; however, the identity of the minor as A.H. was not contested at trial and is not an issue before this Court.

[3] See <u>Miranda v. Arizona</u>, 384 U.S. 436, 479, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).

going to need one." Appellant then stated, "I mean cause I mean, I don't . . . ." The same officer then asked, "Let's clarify something, do you want to continue talking?" Appellant then stated, "Yea[,] I'll continue talking."

As a result of the investigation and appellant's statement, appellant was indicted in a two-count indictment that alleged two counts of aggravated sexual assault of a child under 14 years of age. During pretrial hearings on October 25, 2011, appellant's trial counsel presented an oral motion to require the State to elect on which offense the State was going to proceed. As a result of this oral motion for election, the State announced it was going to try appellant on Count II of the indictment. At the same pretrial hearing, appellant's counsel raised the issue of appellant's request for an attorney during the interview. Trial counsel requested that all portions of the statement after appellant's question regarding an attorney be suppressed. The trial court concluded that it would listen to the audio CD during the lunch hour prior to making any ruling. Appellant's counsel also raised the issue of extraneous offenses that were referred to in appellant's statement. The trial court granted a motion in limine that those matters must be first addressed before the evidence would be presented.

Before jury selection commenced, appellant signed a written request to waive a jury trial and submit the case to a trial before the bench. The State agreed to waive a jury trial, and the jury panel was dismissed.

The entirety of the State's case was presented by three witnesses. Deputy Scifres testified about the facts surrounding the taking of the initial report. Sheriff Davis testified about the taking of appellant's statement. Davis testified that the first thing that

3

occurred was the reading to appellant of his <u>Miranda</u> rights.[4]  According to Davis, appellant acknowledged those rights and that he understood them.  During his direct testimony, Davis was asked if there came a time during the taking of the statement when the appellant referenced the fact that he thought he might need an attorney. Davis did not remember any incident.  Upon further questioning, Davis testified that, had appellant requested an attorney, the interview would have ceased at that point. Ultimately, the CD of the statement was played for the trial court.  Prior to the trial court admitting the CD, counsel for appellant again objected to extraneous offenses that might be discussed during the taking of the statement.  At the conclusion of the playing of appellant's statement, trial counsel again objected to the entire statement, contending that it was not voluntarily given, and specifically objected to anything after appellant's purported request for an attorney.

After listening to the statement, the trial court sustained one objection regarding extraneous offenses relating to a discussion in the statement about guns.  As to appellant's objections to the statement itself, the trial court specifically overruled the objection regarding voluntariness and overruled the objection regarding appellant's purported request for an attorney by a general statement that the objections were overruled.  The statement was then admitted into evidence.  In the statement, appellant admits to having digitally penetrated A.H.'s sexual organ with his finger.  Further, appellant admitted that A.H. was younger than 14 years of age when the incident occurred.  Prior to his admission of having committed the act of digital penetration,

_____

[4] Eventually, S-2, a copy of the <u>Miranda</u> rights that was read to appellant and initialed by appellant, was introduced into the record.

4

appellant also admitted to the incident of sexual intercourse that initiated the investigation. Additionally, during the statement, appellant indicated there were other incidents of inappropriate sexual contact with A.H.

A.H. then testified for the State. A.H.'s testimony began by going over the events of April 2011 that led the Sheriff's Department to begin questioning appellant. This was the alleged incident of intercourse that occurred between A.H. and appellant after AH had turned 15. Before she testified about the incident, trial counsel objected as to the introduction of an extraneous offense. At counsel's request, the trial court granted a running objection as to questions about this alleged incident of intercourse between A.H. and appellant. Prior to actually testifying about any act of intercourse, A.H. requested a recess. When she retook the witness stand, the State moved on to the topic of the indictment, the digital penetration of A.H.'s sexual organ by appellant when A.H. was 12 years of age.

In a very few sentences, A.H. testified that appellant had "fingered me" and explained that, by that, she meant that appellant had placed his finger in her vagina. Additionally, A.H. testified that the digital penetration by appellant occurred before she was 14 years of age and while she was living in Ropes, Texas. Both parties rested and closed at the conclusion of A.H.'s testimony. The trial court found appellant guilty of aggravated sexual assault of a child younger than 14 years. After hearing the evidence regarding punishment, the trial court sentenced appellant to confinement for 50 years in the ID-TDCJ. This appeal followed.

5

Appellant contends, through five issues, that 1) his Fifth Amendment rights were violated in the taking of his statement, 2) the evidence was insufficient to support the verdict, specifically, whether the complainant, A.H., was younger than 14 years of age at the time the offense was committed, 3) the trial court erred in overruling appellant's objection to the extraneous offense evidence, 4) even if the extraneous offense evidence was relevant, it should have been excluded because its probative value was substantially outweighed by unfair prejudice, and 5) appellant's trial counsel rendered ineffective assistance of counsel. Disagreeing with each of appellant's contentions, we will affirm.

## Fifth Amendment[5]

The Fifth Amendment provides that no person shall be required to be a witness against himself in any criminal case. See U.S. CONST. amend. V.

Appellant's issue regarding his statement requires that we determine whether the statement, "Can I get a lawyer in here?" is a clear and unambiguous request for counsel. See Davis v. United States, 512 U.S. 452, 461-62, 114 S.Ct 2350, 129 L.Ed.2d 362 (1994). As the Texas Court of Criminal Appeals has stated, "An ambiguous or equivocal statement with respect to counsel does not even require officers to seek clarification, much less halt their interrogation." State v. Gobert, 275 S.W.3d 888, 892 (Tex.Crim.App. 2009).

How then are we to make this decision regarding appellant's statement? "Whether a statement referring to a lawyer constitutes a clear request for counsel

---

[5] U.S. CONST. amend. V.

6

depends on the statement itself and the totality of the circumstances surrounding the statement." Davis v. State, 313 S.W.3d 317, 339 (Tex.Crim.App. 2010), cert. denied, 132 S.Ct. 122, 181 L.Ed.2d 45 (2011). The test is an objective test which inquires whether the suspect articulated his desire clearly enough that a reasonable police officer in the circumstances would understand the statement to be a request for an attorney. Id.; see Davis, 512 U.S. at 459. In reviewing the totality of the circumstances, we are cautioned that our retrospective view of these circumstances does not allow us to inquire if the suspect really meant to unequivocally invoke his right to counsel. Gobert, 275 S.W.3d at 893 (citing Smith v. Illinois, 469 U.S. 91, 100, 105 S.Ct. 490, 83 L.Ed.2d 488 (1984), for its holding that "an accused's postrequest responses to further interrogation may not be used to cast retrospective doubt on the clarity of the initial request itself").

The record before us consists of a recorded CD of appellant's interrogation and a form containing appellant's Miranda warnings, each of which was initialed by appellant. Accordingly, we know that appellant was warned that he had the rights to remain silent and to have an attorney present during any questioning. Further, appellant was advised that if he could not afford an attorney, an attorney would be appointed to advise him prior to any questioning. The record further makes clear that, after appellant received these warnings, appellant chose to be interviewed by Sheriff Davis.

After going over the events of April 2011, the officers involved started questioning appellant about any earlier sexual involvement with A.H. Initially, appellant answered their questions; however, when one of the officers opined that appellant was lying about

7

some of the matters inquired into, appellant made the statement at issue, "Can I get a lawyer in here?" This was a question directed at the officers. One of the officers replied, "You bet, you're going to need one." After appellant made an incomplete statement, "I mean cause I mean, I don't . . .," an officer asked, "Let's clarify something, do you want to continue talking?" Appellant responded he would continue talking.

The facts of our case are similar to the facts faced by the Houston 14th Court of Appeals in Gutierrez v. State, 150 S.W.3d 827, 832 (Tex.App.—Houston [14th Dist.] 2004, no pet.). In Gutierrez, appellant was given his Miranda warnings prior to being questioned and agreed to talk to the police. Id. at 829. Appellant in Gutierrez then asked, "Can I have him present now?" Id. The officers involved in that case responded affirmatively but told appellant that they would have to cease the interview and take him back to his cell. Id. Then, when asked if he wanted his attorney present, appellant stated, "No" and proceeded to give a statement. Id. The Houston court held that, from a review of the dialogue between the appellant and the officers, appellant's ambiguous question about counsel followed by an unambiguous rejection of the attorney's presence led to the conclusion that there was no violation of his Fifth Amendment rights. Id. at 832.

In Mbugua v. State, 312 S.W.3d 657, 665 (Tex.App.—Houston [1st Dist.] 2009, pet. ref'd), the statement at issue was, "Can I wait until my lawyer gets here?" The court in Mbugua determined that the statement was a question and did not clearly state a firm, unambiguous, and unqualified condition that further questioning must be conducted only with appellant's attorney present. Id.

8

Both Gutierrez and Mbugua are similar to our case in that each involves the purported request for counsel that was couched in the form of a question. We find the cases to be instructive in our decision. From the totality of this record, we view appellant's statement, "Can I get a lawyer in here?" to be a statement that might have been an invocation of the right to counsel, but was not a clear, unambiguous request for an attorney. See Davis, 313 S.W.3d at 339. Accordingly, the trial court did not err when it overruled appellant's objection to the admission of that portion of his recorded statement that followed his question, "Can I get a lawyer in here?" Appellant's first issue is overruled.

Sufficiency of the Evidence

Standard of Review

In assessing the sufficiency of the evidence, we review all the evidence in the light most favorable to the verdict to determine whether any rational trier of fact could have found the essential elements of the offense beyond a reasonable doubt. Jackson v. Virginia, 443 U.S. 307, 319, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979); Brooks v. State, 323 S.W.3d 893, 912 (Tex.Crim.App. 2010). "[O]nly that evidence which is sufficient in character, weight, and amount to justify a factfinder in concluding that every element of the offense has been proven beyond a reasonable doubt is adequate to support a conviction." Brooks, 323 S.W.3d at 917 (Cochran, J., concurring). We remain mindful that "[t]here is no higher burden of proof in any trial, criminal or civil, and there is no higher standard of appellate review than the standard mandated by Jackson." Id. When reviewing all of the evidence under the Jackson standard of review, the ultimate

9

question is whether the jury's finding of guilt was a rational finding. See id. at 906–07 n.26 (discussing Judge Cochran's dissenting opinion in Watson v. State, 204 S.W.3d 404, 448–50 (Tex.Crim.App. 2006), as outlining the proper application of a single evidentiary standard of review). "[T]he reviewing court is required to defer to the jury's credibility and weight determinations because the jury is the sole judge of the witnesses' credibility and the weight to be given their testimony." Id. at 899.

Analysis

Appellant's contention is that the evidence is insufficient in one particular aspect, to show that A.H. was younger than 14 years of age. Appellant's contention is based upon the premise that the only evidence to prove the case is the testimony of A.H., because appellant's statements regarding this incident should have been suppressed. Something we have decided contrary to appellant. However, even if we had suppressed appellant's statements, there was sufficient evidence to prove the allegations.

To convict appellant of aggravated sexual assault of a child younger than 14 years of age, as indicted, the State had to prove that:

> 1.) Appellant,
>
> 2.) intentionally or knowingly,
>
> 3.) caused penetration of the sexual organ,
>
> 4.) of A.H.,
>
> 5.) a child, younger than 14 years of age
>
> 6.) by use of his finger.

10

See TEX. PENAL CODE ANN. § 22.021(a)(1)(A), (2)(B).

In an effort to prove these elements, the State produced the testimony of A.H., who testified that, when she was 12 years of age, she was living in Ropes, Texas, and it was at this time that appellant "fingered" her. A.H. explained that, by "fingered" her, she meant that appellant stuck one of his fingers in her vagina. Further, she testified that this incident occurred before she was 14 years of age.

Appellant characterizes this testimony as conclusory and subject to impeachment because of an alleged false report A.H. gave regarding an allegation of a prior sexual assault by appellant. This was a subject raised in appellant's recorded statement. Questions of credibility and weight to be given testimony are for the fact finder's determination. Brooks, 323 S.W.3d at 899. As a reviewing court, we will not reassess the fact finder's determination on these issues. Id. Accordingly, we find the fact finder's decision to convict appellant of the offense was a rational decision. Jackson, 443 U.S. at 319; Brooks, 323 S.W.3d at 906-07, 912. Appellant's second issue is overruled.

Extraneous Offense

Standard of Review

We review the trial court's decision to exclude or admit evidence for an abuse of discretion. Montgomery v. State, 810 S.W.2d 372, 379 (Tex.Crim.App. 1990) (en banc) (citing Marras v. State, 741 S.W.2d 395, 404 (Tex.Crim.App. 1987) (en banc)). The test for abuse of discretion is a question of whether the trial court acted without reference to any guiding rules and principles. Id. at 380. We will uphold the trial court's ruling "so

11

long as the result is not reached in an arbitrary or capricious manner." Id. Further, if the trial court's ruling on an evidentiary matter is correct on any theory of law applicable to that ruling, it will not be disturbed, even if the trial court gave the wrong reason for its ruling. See De La Paz v. State, 279 S.W.3d 336, 344 (Tex.Crim.App. 2009).

Analysis

Appellant contends that during his trial for digital penetration of the sexual organ of A.H., a child under 14 years of age, the State was allowed to introduce testimony about a subsequent sexual assault by intercourse by appellant of the same A.H. after she was 15. According to appellant's issue, the trial court admitted the evidence to show pattern, scheme, or lack of mistake. In an effort to demonstrate that the trial court committed error, appellant then spends significant effort to show how pattern, scheme, or lack of mistake are not present in the case before the Court.

Appellant's analysis of this issue overlooks article 38.37 of the Texas Code of Criminal Procedure[6] that states:

> Sec. 1. This article applies to a proceeding in the prosecution of a defendant for an offense, or an attempt or conspiracy to commit an offense, under the following provisions of the Penal Code:
>
> (1) if committed against a child under 17 years of age:
>
>     (A) Chapter 21 (Sexual Offenses)
>
>     . . .

---

[6] Further reference to the Texas Code of Criminal Procedure will be by reference to "article ___", "Article ____" or "art. ____."

Sec. 2   Notwithstanding Rules 404 and 405, Texas Rules of Evidence, evidence of other crimes, wrongs, or acts committed by the defendant against the child who is the victim of the alleged offense shall be admitted for its bearing on relevant matters, including:

(1) the state of mind of the defendant and the child; and

(2) the previous and subsequent relationship between the defendant and the child.

By enacting article 38.37, the legislature has determined that, when dealing with a crime involving sexual assault of a child victim less than 17 years of age, the type of evidence that appellant is complaining of is admissible as relevant on the issues outlined in the article.  See Sanders v. State, 255 S.W.3d 754, 758-59 (Tex.App.—Fort Worth 2008, pet. ref'd).  This Court has likewise held in an unpublished opinion.  See Weeks v. State, Nos. 07-09-0077-CR to 07-09-0080-CR, 2010 Tex. App. LEXIS 5695, at *2-3 (Tex.App.—Amarillo Jul. 20, 2010, pet. ref'd) (mem. op., not designated for publication).  Appellant offers no explanation of why this evidence was not admissible under article 38.37.  Rather, he simply continues to argue that it was inadmissible under Rule 404(b) of the Texas Rules of Evidence.[7]  The statute clearly excepts this type of evidence from the purview of Rule 404(b).

As to appellant's complaint that the trial court admitted the evidence to show pattern, scheme, or lack of mistake, this argument does not change the outcome.  This argument ignores the case law holding that, if the trial court's ruling is correct under any applicable theory of law, we will not disturb the ruling on appeal.  See De La Paz, 279 S.W.3d at 344.  Accordingly, appellant's third issue is overruled.

---

[7] Further reference to the Texas Rules of Evidence will be by reference to "Rule _____" or "rule _____."

13

Rule 403

Appellant's next issue complains that, even if the evidence was relevant, the probative value of the evidence was substantially outweighed by the danger of unfair prejudice. However, as appellant candidly admits, trial counsel lodged only a general objection to the admission of extraneous offenses. Such an objection is not sufficient to preserve the Rule 403 objection for appellate review. See TEX. R. APP. P. 33.1(a); Montgomery, 810 S.W.2d at 388. Accordingly, appellant's fourth issue is overruled.

Ineffective Assistance of Counsel

Standard of Review

The United States Constitution's guarantee of the right to counsel encompasses the right to effective assistance of counsel. U.S. CONST. amend. VI; Strickland v. Washington, 466 U.S. 668, 686, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). In determining whether counsel's representation was so inadequate as to violate a defendant's Sixth Amendment right to counsel, Texas courts apply the two-pronged test enunciated in Strickland, 466 U.S. at 687. See Hernandez v. State, 726 S.W.2d 53, 55 (Tex.Crim.App. 1986) (en banc). Judicial review of an ineffective assistance of counsel claim must be highly deferential, and there is a strong presumption that trial counsel's conduct fell within the wide range of reasonable professional assistance. Strickland, 466 U.S. at 689. An appellant claiming ineffective assistance of counsel bears the burden of proving by a preponderance of the evidence that (1) counsel's representation fell below an objective standard of reasonableness and (2) the deficient performance prejudiced the appellant. Id. at 687. Failure to make the required showing of either

14

deficient performance or sufficient prejudice is fatal to an ineffectiveness claim. See id. at 700.

The "right to effective assistance of counsel merely ensures the right to reasonably effective [not perfect] assistance." Robertson v. State, 187 S.W.3d 475, 483 (Tex.Crim.App. 2006) (quoting Ingham v. State, 679 S.W.2d 503, 509 (Tex.Crim.App. 1984) (en banc)). This right does not mean errorless or perfect counsel whose competency of representation is to be judged by hindsight. See Ingham, 679 S.W.2d at 509. "Isolated instances in the record reflecting errors of omission or commission do not render counsel's performance ineffective, nor can ineffective assistance of counsel be established by isolating one portion of trial counsel's performance for examination." Robertson, 187 S.W.3d at 483 (quoting McFarland v. State, 845 S.W.2d 824, 843 (Tex.Crim.App. 1992) (en banc)). Counsel's performance is judged by "the totality of the representation," and "judicial scrutiny of counsel's performance must be highly deferential" with every effort made to eliminate the distorting effects of hindsight. Id. The Strickland Court cautioned us to avoid an intrusive post-trial inquiry into attorney performance because such an inquiry would encourage the proliferation of ineffectiveness challenges. Id. (citing Strickland, 466 U.S. at 690).

To that end, we are instructed that, in order for an appellate court to find that counsel was ineffective, counsel's deficiency must be affirmatively demonstrated in the trial record. Lopez v. State, 343 S.W.3d 137, 142 (Tex.Crim.App. 2011). The court further advises that, "[w]hen such direct evidence is not available, we will assume that

counsel had a strategy if any reasonably sound strategic motivation can be imagined." Id. at 143.

Analysis

Appellant's claim of ineffective assistance of counsel is centered on the failure of trial counsel to voice an objection pursuant to Rule 403 to the extraneous offense evidence proffered by the State. According to appellant's theory, such an objection would have led to exclusion of the evidence because the probative value of such evidence was substantially outweighed by danger of unfair prejudice. In an effort to support his claim of ineffective assistance of counsel, appellant contends that failure to call witnesses in guilt or punishment and a lack of preparation are also demonstrated in the record.

As to appellant's first contention, the failure to object pursuant to Rule 403, the record is silent as to why trial counsel did not object. According to appellant, this error is such that no further inquiry into why trial counsel failed to object is necessary for this Court to find that such an action fell below an objective standard of reasonableness. However, cases decided by the Texas Court of Criminal Appeals do not support appellant's position.

In Goodspeed v. State, 187 S.W.3d 390, 391 (Tex.Crim.App. 2005), the issue was the failure of trial counsel to ask any questions during voir dire, compounded by exercising two peremptory challenges against jurors previously excused for cause. The court went on to describe a number of reasons why trial counsel would refrain from asking questions during voir dire. Id. at 393-94. The court then explained that the

proposed reasons are speculative, but that is the problem with trying to evaluate an ineffective assistance claim where trial counsel has not had the opportunity to respond. Id. at 394. The court found that an inquiry for the reasons for counsel's action was needed and reversed the decision of the intermediate appellate court. Id. at 391.

In Lopez, the issue was the failure of counsel to object to the testimony of multiple outcry witnesses in an aggravated sexual assault of a child case. Lopez, 343 S.W.3d at 139. Additionally, counsel had allowed the State to improperly bolster the complaining witness's testimony. Id. at 140-41. The intermediate appellate court had found that counsel's actions fell below an objective standard of reasonableness. Id. 139-40. The court noted that "it is a rare case in which trial counsel's ineffectiveness is apparent from the record." Id. at 143. The court noted that the State had offered possible reasons for counsel's failure to object. Id. 141-42. However, the Texas Court of Criminal Appeals never directly commented on the State's proffered reasons; rather, it simply held that the record was silent as to why counsel failed to object. Id. at 143. Because the record was silent, the court found that appellant had not met his burden as to the first prong of Strickland. Id. at 144.

Finally, in the case of Menefield v. State, 363 S.W.3d 591, 592 (Tex.Crim.App. 2012), the court reviewed trial counsel's failure to object to admission of a laboratory report admitted when the technician who conducted the tests and wrote the report did not testify. This Court had held that the report was inadmissible because it violated the Confrontation Clause of the U.S. Constitution, and our opinion concluded that we could "imagine no reasonable trial strategy for [defense counsel's] remaining silent. Id. (citing

17

Menefield v State, 343 S.W.3d 553, 555-56 (Tex.App.—Amarillo 2011)). The court concluded that the direct appeal record was insufficient to determine the question of ineffective assistance of counsel. Id. at 592. The court concluded by saying, "We do not know why counsel failed to raise a Confrontation Clause objection because the record is silent on the matter." Id. at 593. Ultimately, the court held that the record failed to show deficient performance. Id.

From these cases, we deduce that, as an intermediate appellate court, and before we can conclude that counsel's performance was deficient, we must afford trial counsel the opportunity to explain his actions. If we do not, then we are finding counsel engaged in conduct "so outrageous that no competent attorney would have engaged in it." Id. (quoting Garcia v. State, 57 S.W.3d 436, 440 (Tex.Crim.App. 1999)). Further, the record demonstrates that appellant's Rule 404(b) objection was overruled, as to the later incidents of sexual contact between appellant and A.H. Trial counsel could have determined that pressing the Rule 403 objection was counter-productive because the same judge who was going to rule on these matters would be deciding the issue of punishment. We simply do not know why counsel chose not to lodge the Rule 403 objection, and we feel he is entitled to the opportunity to explain his reasoning.

As to the other incidents of alleged ineffective assistance of counsel, the same analysis applies. Counsel has not been given the opportunity to explain why he did not call any witnesses or, if in fact, any witnesses were willing to take the witness stand in support of appellant during either the guilt or punishment phase. As to the allegation that counsel's announcement to the trial court clearly shows he was unprepared, the

18

statement quoted by appellant is taken out of context. In the context of the full statement, counsel advised the trial court he was "legally ready with respect to being prepared for trial. And again, I don't think my client is going to be satisfied with the way that I represent him or the strategy that I'm employing here. But to answer the Court's question, the way that I look at it, I think I'm prepared to proceed today." This is a far different matter than appellant's attempt to portray counsel's announcement as a tentative and hesitant announcement of ready. Additionally, the record reflects that trial counsel had filed a number of pretrial motions and conducted appropriate pretrial discovery. Additionally, trial counsel had successfully requested that the State be required to elect on which count of the indictment it was going to proceed. From a review of the record, we do not find any support for the proposition that trial counsel was not prepared for trial.

In sum, we have determined, based upon the record before us, that appellant has failed to carry his burden regarding the allegation of ineffective assistance of counsel as to the allegation regarding the Rule 403 objection. See Strickland, 466 U.S. 687. Further, we have determined that the record is totally devoid of any evidence regarding the failure of trial counsel to call any witnesses. Id. And, lastly, the record does not support appellant's contention that trial counsel was ineffective because he was unprepared. Id. Accordingly, we overrule appellant's contentions regarding ineffective assistance of counsel.

## Conclusion

Having overruled all of appellant's issues, we affirm the judgment of the trial court.


Mackey K. Hancock
Justice


Do not publish.